EZRA CARTER, in equity, *vs.* FREDERIC W. BAILEY, *et al.*

*Copyright.   Equity, jurisdiction.*

An owner in common of a copyright, who has, at his own expense, printed, published, and sold the book copyrighted, is not liable, in the absence of any agreement *inter sese*, to account to his co-owner.

This court sitting in equity will not entertain jurisdiction of a bill between owners in common of stereotype plates, seeking for an account for the use and income of the common property, when no discovery is sought, and the accounts are simple and can be properly and conveniently adjusted in an action at law.

BILL IN EQUITY.

The complainant set out that, for many years prior to the twenty-eighth day of June, 1860, he and one Oliver L. Sanborn were copartners in the book business, owning together the copyrights and stereotype plates of several books mentioned; that, upon that day, the copartnership was dissolved and it was agreed in writing that the property specified should belong to them "as individuals, co-owners, co-tenants and tenants in common until the same should be converted into cash, or otherwise, at their option,

and then should be equally divided between them;" that Bailey & Noyes well knew the premises, but that, some time between August 1, 1865, and August 1, 1867, said Sanborn fraudulently sold them all said stereotype plates, assuming to convey the whole title, whereas the complainant's interest therein was worth fifteen hundred dollars; that, on the second day of July, 1866, said Sanborn fraudulently demised and leased to Bailey & Noyes the whole of said copyrights; that, in 1867, said Sanborn was adjudicated a bankrupt, and on the fourteenth day of November, 1868, his assignee sold all said Sanborn's interest in these copyrights to these respondents; "whereby said Bailey & Noyes became the equal co-owners, co-tenants and tenants in common with your orator in all of said copyrights and publishing rights of all of said books, in the place of said Sanborn;" that "said Bailey & Noyes, since the first day of August, A. D., 1865, to the present time, have had the exclusive possession, use, benefit and profit of all said copyrights and all the publishing rights incident thereto, and by virtue thereof have printed, published and sold large quantities of all said books," giving an estimate of the sales; "that the royalty, rents and profits of said copyrights and publishing rights incident thereto, were ten per cent. of the retail price of each and all of said books," which is then stated; that there is due the complainant on account of the copyrights and plates, including interest, $5,544.31 ; that a settlement has been repeatedly requested by the complainant and refused by the respondents ; wherefore he prayed that they be required to account and to pay him such sum as might be found due.

To this bill the defendants demurred, and the hearing was upon the demurrer.

*A. Merrill* for the complainant.

The parties were co-tenants and co-owners of the property mentioned in the bill. *Strickland* v. *Parker*, 54 Maine, 268. The respondents have had the sole benefit and income from the common property, without Mr. Carter's knowledge or consent, and he now wants a discovery of the profits or royalty. *Cutler* v. *Currier*, 54 Maine, 81.

This being a dispute between part owners of personal property is within the equity jurisdiction of this court. R. S., c. 77, § 5; Public Laws of 1873, c. 140; *McKim* v. *Odom*, 12 Maine, 105; *Mustard* v. *Robinson*, 52 Maine, 54.

*S. C. Strout* and *H. W. Gage* for the respondents.

There is no pretence of any publication by agreement, nor of any express promise to account, but it is assumed that this liability results from the "joint ownership of the copyrights and plates, without any allegation that Bailey & Noyes have ever, in any way, prevented said Carter from exercising his right of publication.

A copyright is an exclusive right to the multiplication of copies. *Stephens* v. *Cady*, 14 Howard, 528. A joint interest in it does not make the co-owners partners. *Parkhurst* v. *Kinsman*, 1 Blatchf. C. C., 488; *Gould* v. *Banks*, 8 Wend., 568. Each part owner has the right to publish and sell. *Vose* v. *Singer*, 4 Allen, 226; *Whittemore* v. *Cutter*, 1 Gall, 429; *Clum* v. *Brewer*, 2 Curtis, 506.

But if the defendants received any benefit from Carter's interest, his remedy is at law. *Gowen* v. *Shaw*, 40 Maine, 56; *Dyer* v. *Wilbur*, 48 Maine, 287; *Stone* v. *Aldrich*, 43 N. H., 52.

This is not framed as a bill of discovery, nor sworn to as such.

For aught that appears, Carter may have exercised the right of publication to a far greater extent than the defendants.

VIRGIN, J. This case comes before us on demurrer to the bill.

The plaintiff alleges substantially that he and the defendants are tenants in common in the proportions stated of the copyrights of certain school books described by their respective titles; that since August, 1865, the defendants, without his consent, have printed, published and sold large specified numbers of the books, at a certain net profit; that he is equitably entitled to a share of the profits proportioned to the extent of his undivided interest; and he prays that the defendants be decreed to account to him for the same with equitable interest.

The question presented is whether one owner in common of a copyright, who, at his sole expense has printed, published and sold the book copyrighted, is liable in the absence of any agreement *inter sese*, to account to his co-owner.

We are not aware that this precise question has ever been decided.

The doctrine that an author has a right of property in his ideas and is entitled to demand for them the same perpetual protection which the law accords to the proprietor of personal property generally, finds no recognition either in the common law or in the statutes of any civilized country. When he has embodied his thoughts in manuscript, the latter is his exclusive property having the characteristics of transfer and succession common to personal property. Being his property, the author may exercise full dominion over it. He may publish it to the world or not, at his option. *Bartlett* v. *Crittenden*, 5 McLean, 36; *Little* v. *Hall*, 16 How., 170; *Palmer* v. *De Witt*, 47 N. Y., 532. If he publishes his book he ceases to have any exclusive claim to the ideas or sentiments thereon expressed, considered apart from the language or the outward semblance in which they are conveyed; for he can no longer exclusively appropriate the thoughts which have entered into the understandings of other persons through publication, or prevent the unlimited use of every advantage which the purchaser can reap from the doctrine or sentiments which the work contains. *Miller* v. *Taylor*, 4 Burr., 2362; *Stowe* v. *Thomas*, 5 Wall., Jr., 564; *Greene* v. *Bishop*, 1 Cliff., 198.

The public are interested in the development and promulgation of all new, wholesome ideas, and in new combinations and illustrations of old ones; and the most efficient mode of promulgating them is that afforded by the press. Without publication and some exclusive right thereto, the products of authors would prove comparatively profitless. The public, then, for the addition to its general stock of knowledge, and the author, in consideration of the pecuniary profit derivable therefrom, are jointly interested in the publication of new works. The framers of the U. S. Consti-

tution recognizing the importance of establishing a just policy in relation to this and its kindred subject, empowered congress "to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." Art. 1, Sect. VIII., cl. 8. Congress forthwith enacted statutes for carrying into execution this power. These statutes were not regarded as regulations of existing common law rights, ( *Wheaton* v. *Peters,* 8 Pet., 591; *Jefferies* v. *Boosey,* 4 H. L. Cas., 815;) but the "exclusive right to their respective writings for limited times" was thereby created and conferred upon authors as a compensation for their contributions to the promotion of general knowledge. The impracticability of fixing any specific price for their respective contributions was avoided by leaving the sum to be graduated by the *ad valorem* favor which the public should mete out to the author by way of demand for his production.

The right created and granted to authors by the federal statutes "respecting copyrights," is *sui generis ;* consisting as its name indicates, in the "sole right" of the "author or authors," "their executors, administrators or legal assigns" resident in the United States, to print, reprint, publish and vend their productions, for the term specified. 4 U. S. Stats., 436, c. 16, § 1, in force when the copyrights in question were secured. It is an incorporeal right, resting entirely in the reasonable interpretation of the terms of the grant; and so disconnected from, and independent of any material substance such as manuscript or plate, that a sale of either or both of these will not necessarily carry with it any right on the part of the purchaser thereof to make copies of the original work—the right to copy or the "copyright" still remaining in the author, his legal representative or assignee, a distinct, well defined, though intangible legal estate. *Stevenson* v. *Cady,* 14 How., 530; *Stevens* v. *Gladding,* 17 How., 447.

The statute evidently contemplates that the copyright may be secured in the name of the author ; or, if he have legally assigned his right, the assignee may avail himself of the provisions of the

statute and secure the title in his name. In whosever name taken, whether in that of the author or of him whose title is derived from one sustaining that relation to the work, the legal proprietor may have his legal and equitable interests decided and protected in the appropriate tribunals. If there be more than one author or assignee, all of either class, as the case may be, may have the copyright.

So whenever the legal estate has once vested through a compliance with the statute, it is assignable. The assignment is not limited to one, but may be to more than one—nor to the whole interest, but any owner may sell and assign any aliquot part of his undivided interest. When the assignment is made to more than one, the ownership is not that of partners; although they may enter into any contract of partnership *inter sese*, or between themselves and publishers of their works. *Gould* v. *Banks*, 8 Wend., 568; *Pulte* v. *Derby*, 5 McLean, 328; *Stevens* v. *Rumney*, 6 De G. M. & G., 223. In the absence of any contract modifying their relations, they are simply owners in common, as the plaintiff has alleged, each owning a distinct but undivided part which or any part of which alone he can sell, as in the case of personal chattels.

The statute confers upon all the owners full power, without exacting any obligation in return to print, publish and sell. It gives no superior right to either—the only restriction being as to time. All others within that period, having no license from them or some one of them, are excluded. Each can exercise his own right alone without using, or receiving any aid or benefit whatever from the title or property of the others. But if none be allowed to enjoy his legal interest without the consent of all, then one, by withholding his consent, might practically destroy the value of the whole use. And a use only upon condition of accounting for profits, would compel a disuse, or a risk of skill, capital and time with no right to call for a sharing of possible losses. When one owner by exercising a right expressly conferred upon him, in nowise uses or molests the right, title, possession or estate of his co-owners, or hinders them from a full enjoyment, or sale and transfer

of their whole property, we fail to perceive any principle of equity which would require him to account therefor. If owners of such property would have the result otherwise, they must bring it about by contract. Such seems to be the rule governing owners in common of patent rights; (*Clum* v. *Brewer*, 2 Curt. C. C., 507; *Vose* v. *Singer*, 4 Allen, 226; *Mathers* v. *Green*, 1 Ch. Ap. Cas. 30; *contra*, *Pits* v. *Hall*, 3 Blatchf. 201;) and we think the same principle applicable to the question involved in case of copyright. The bill cannot be sustained so far as it seeks for an account in respect to the copyrights.

The plaintiff also claims to recover the value of one undivided half of the stereotype plates owned in common by these parties; one allegation being that Sanborn "fraudulently sold, transferred and delivered to the defendants the entire property of all said stereotype plates for a valuable consideration." The sale of personal property by one owner in common does not as against his co-owner, vest the entire common property in the vendee; but the co-owner may assert his title to his own share; or he may have trover for its value against him who converted it by assuming to own and sell the whole; (*Wheeler* v. *Wheeler*, 33 Maine, 347;) but not against the vendee so long as he continues in possession and uses it in a manner not inconsistent with the co-owner's rights. *Dain* v. *Cowing*, 22 Maine, 347; *Kilgore* v. *Wood*, 56 Maine, 150. Or he may waive the the tort and recover in assumpsit for his share of the money received by the vendor. *Moses* v. *Ross*, 41 Maine, 360; *White* v. *Brooks*, 43 N. H., 402. And the remedy in trover is ample for the injury set forth in the further allegation that "said defendants used up and destroyed all of said stereotype plates." *Herrin* v. *Eaton*, 13 Maine, 193; *Strickland* v. *Parker*, 54 Maine, 263.

The foregoing remedies, however, do not enable the plaintiff to recover for "the use, rents, profits or income" of the plates, sought.

At common law each tenant in common of the realty may, at all times, reasonably enjoy every part of the common property, reasonable enjoyment being such as will not interfere with the like

rights of his co-tenants. *Knox* v. *Silloway*, 10 Maine, 201; *Hutchinson* v. *Chase*, 39 Maine, 513. In the case of saw-mills, the statute has reduced this abstract rule to a practical one, by apportioning the time of occupancy among the tenants according to their respective interests. R. S., c. 88, § 8. So owners in common of personal property hold by unity of possession—each having an equal right of occupancy. But there are numerous kinds of property, animate and inanimate, in their nature inseverable, which cannot be beneficially enjoyed in common, and which are not susceptible of a joint and equal possession. One owner in common, having no superior rights, cannot maintain replevin to recover possession from his co-owner; (*Witham* v. *Witham*, 57 Maine, 447;) nor trover for the value of his share—unless the treatment of the common property on the part of the owner in possession amount to conversion, the possession of one and its appropriate use not being regarded as inconsistent with the rights of the other. *Estey* v. *Boardman*, 61 Maine, 595. The common law, therefore, furnishes no specific remedy in respect to the possession of such kinds of property, but leaves each owner in common thereof to take possession "when he can see his time." Co. Litt., § 322; *Esty* v. *Boardman, supra.* Having possession and appropriating it to such uses only as it was designed for, the owner has only what the law gives him; and he may maintain such possession and prosecute such use without laying himself under obligation to pay or account therefor, unless he take more than his share of the rents and income, without the consent of his co-owners, and refuse, in a reasonable time after demand, to pay such co-tenants their share thereof; and then he will be liable to an action of special assumpsit. R. S., c. 95, § 16; *Moses* v. *Ross*, 41 Maine, 360; *Dyer* v *Wilbur*, 48 Maine, 287; *Cutler* v. *Currier*, 54 Maine, 81; *Blood* v. *Blood*, 110 Mass., 545.

This court as a court of equity has jurisdiction of matters of account between owners in common of personal property; and when such a case is presented, wherein is involved a variety of adjustments, limitations, cross-claims or other complications, it

will afford to parties the superior facilities of equity in effecting distributive justice among them, although as a court of law it also has jurisdiction of the subject matter. But when, as in the case at bar, the account (if any) is simple, and all upon one side, and can be fully and readily adjusted by a judgment in an action of assumpsit, and no discovery is sought, the necessity for entertaining equity jurisdiction of the case does not exist, and the court will decline it. *Gloninger* v. *Hazard*, 42 Penn. St. R., 401 ; *Blood* v. *Blood*, 110 Mass., 545. *Demurrer sustained.*

*Bill dismissed with costs.*

APPLETON, C. J., WALTON, DICKERSON, BARROWS and PETERS, JJ., concurred.