HERBERT v. FIELDS et al.

(Supreme Court, Special Term, New York County. April 1, 1915.)

1. COPYRIGHTS ⊙⇒66—INFRINGEMENT—MUSICAL PLAY.
　　Where the book of a musical comedy was adapted from a foreign play by one author, the lyrics were written by another, and the music for the lyrics composed by a third, and the copyrighted publication contained only the lyrics and music, the book was a separate work, and its owners can license a moving picture reproduction thereof without infringing the rights of the composer of the music.
　　[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 63; Dec. Dig. Dig. ⊙⇒66.]

2. COPYRIGHTS ⊙⇒83—LICENSES—JOINT OWNER.
　　One joint owner of a copyright cannot restrain the reproduction of the work, without proving that such reproduction was not licensed by one of the co-owners.
　　[Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 74-76; Dec. Dig. ⊙⇒83.]

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. COPYRIGHTS ☞48—LICENSES—DESTRUCTION OF PROPERTY.

A license given by one joint owner of a copyrighted musical play to reproduce the scenes in moving pictures is not a physical destruction of the property, amounting to a conversion, which the joint owner can restrain.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 46; Dec. Dig. ☞48.]

4. COPYRIGHTS ☞74—INJUNCTION—CONTRACT.

A contract made in February, 1908, whereby plaintiff agreed to write and compose the music for a comic opera and to give defendant the exclusive right to produce it during the season commencing November 15, 1908, and terminating May 15, 1909, and the defendant agreed not to produce any part thereof disassociated from the music without plaintiff's consent, does not authorize the granting of an injunction to restrain the defendant from licensing moving picture reproductions of a copyrighted musical play of another name, the music only of which was composed by plaintiff, the book being adapted from a play which defendant first saw in the fall of 1908, and which was produced in November, 1909, without further proof that the music for that play was composed pursuant to the contract.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 65; Dec. Dig. ☞74.]

Suit by Victor Herbert against Lew Fields and others. Motion for temporary injunction denied.

Nathan Burkan, of New York City, for plaintiff.

William Klein and Simpson, Thatcher & Bartlett, all of New York City, for defendants.

BIJUR, J. Plaintiff seeks an injunction against defendants from producing in moving pictures the play entitled "Old Dutch." The facts concerning the authorship of the work are not disputed. Lee Shubert, in Europe, in the latter part of 1908, saw and purchased the American rights of a German play. In the early spring of 1909 he had this play translated and adapted for the American stage by Edgar Smith. Shubert then determined to have it produced as a musical comedy, whereupon he and Lew Fields made some agreement to that end; Fields and Shubert (or the respective corporations which they represented) becoming co-owners of the play. Fields engaged Victor Herbert to write the music, and, finding that Herbert, for reasons which have no bearing on this controversy, would not collaborate with Smith, George V. Hobart was engaged to write the lyrics, to which Herbert set the music. Thus admittedly the opera was the final product of the original German authors, of Smith, who adapted the present libretto, of Hobart, who wrote the words of the lyrics, and of Herbert, who composed the music thereto. The first production of the comic opera under the title "Old Dutch," with Lew Fields as the star, took place November 6, 1909.

[1] Plaintiff claims that the work is the joint production of the three American artists who have contributed to its present form, and that the music composed by him is an integral part of the work. But the affidavits, in this respect apparently uncontradicted, indicate that the music composed by plaintiff covers only the lyrics written by Hobart.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

It is quite probable that under these circumstances the libretto may be regarded as a separate creation of which Shubert and Fields are the sole owners.

This situation is radically different from that disclosed in the case cited on behalf of the plaintiff, namely, Maurel v. Smith, 220 Fed. 195, opinion by Judge Hand, in the federal District Court, February 2, 1915. There the plaintiff, as creator of the scenario upon which the play was ultimately constructed, was treated as a joint creator of the final product; but the indissoluble identification of the scenario with the final play was manifest, indeed admitted. In the case at bar it is quite clear that Smith's production is a complete play, namely, the American adaptation of a German farce. Of course, it is quite possible that music might be so composed for use with that play as to make a complete and inseparable whole out of words and music; but the fact that Herbert and Smith did not collaborate, that, on the contrary, Hobart composed additional and separate lyrics, to which alone apparently the music of the plaintiff applies, differentiates this case clearly from the Maurel Case.

This view is strongly confirmed by the circumstances concerning the copyright, which was obtained by M. Wittmark & Sons upon a publication the title page of which reads:

"Old Dutch. A musical comedy. Book adapted from the German by Edgar Smith. Lyrics by George V. Hobart. Music by Victor Herbert."

Plaintiff claims that the copyright was obtained on behalf of all three as joint producers. Smith denies that he ever authorized the taking of the copyright, or that he received any benefit therefrom. The copyrighted book contains only the music of Herbert and the lyrics of Hobart, and the "certificate of copyright registration," produced from the government office, bears the significant notation "Vocal Score." So far, therefore, as the fact and circumstances of the copyright and the connection of plaintiff therewith are concerned, they indicate to my mind that the vocal score produced by Hobart and Herbert is a separable production, copyrighted and sold as such. It follows that the libretto is also a separable and separate work owned by Shubert and Fields, and that the production of the moving pictures without music is quite independent of any rights of Herbert.

[2] On the other hand, if plaintiff's claim that the work must be treated as a whole be accepted, it is difficult to escape the application of the principle that plaintiff alone cannot restrain a production of the work by third parties, without proof that they have not been licensed by his co-owners. In this case, however, Fields, Shubert, and Smith each avers that the moving picture production has been made with their express consent.

[3] Plaintiff concedes that a license may be given by any co-owner, as held in many cases—for example, Nillson v. Lawrence, 148 App. Div. 678, 133 N. Y. Supp. 293; De Witt v. Elmira Nobles Mfg. Co., 66 N. Y. 459, 23 Am. Rep. 73. He seeks, however, to take this case out of the operation of the rule by appealing to a principle indicated, though not directly held, in Osborn v. Schenck, 83 N. Y. 201, quoting the following language from the opinion, at page 204:

·· "But it also follows that if that possession [by one cotenant] develops into a destruction of the property or of the interest of the cotenant, or into such a hostile appropriation of it as excludes the possibility of beneficial enjoyment by him, or ends in a sale of the whole property which ignores and denies any other right, then a conversion is established, and trover may be maintained against the wrongdoer. * * * But in White v. Osborn, 21 Wend. 75, * * * it was decided that the sale of the whole property, which ignored and denied the right of the cotenant, furnished sufficient proof of a conversion." ·

· It will probably not be disputed that the rights of a co-owner do not extend to the destruction of the article owned. To apply that term, however, to the case at bar, would be manifestly to convert words used to describe a physical result into a pure metaphor. Plaintiff urges that the production of the moving pictures to large crowds at low prices of admission "destroys" the work. While the question whether the moving picture production detracts from or adds to its value as a musical comedy may be debatable, it seems perfectly clear that any analogy sought to be derived from the total physical destruction of an article owned in common is utterly inapplicable.

[4] I come, then, to the only remaining basis on which plaintiff may seek relief, namely, a contract entered into in February, 1908, between Herbert and Fields, in which Herbert agreed "to write and compose the music of a comic opera to be known as 'Regina,' which title is, however, subject to being changed." Herbert further grants to Fields the exclusive right to produce such comic opera during the season commencing November 15, 1908, and terminating May 15, 1909. Fields agrees "not to produce such comic opera, or the book or lyrics or any part thereof, disassociated from the music" of Victor Herbert without Herbert's consent. This provision, if the defendants are bound by it, would validly limit their right to license the moving picture production without Herbert's consent. De Witt v. Elmira Nobles Mfg. Co., 66 N. Y. 459, 462, 23 Am. Rep. 73.

To the manifest objection of defendants that this contract was signed by Fields alone, and did not bind Shubert or Smith, plaintiff, I think, successfully points out that, under the circumstances set forth by the defendants themselves, Fields may well be regarded as the agent of Shubert and Smith for the purpose of procuring the composition of the music of Herbert, and, in addition, as having ratified any contract made by Fields with Herbert by having accepted the benefit thereof. Ramsay v. Miller, 202 N. Y. 72, 75, 76, 95 N. E. 35. White v. Kenny, 146 App. Div. 803, 805, 131 N. Y. Supp. 416. This view of Fields' agency is confirmed also, by the consideration pointed out by plaintiff that although both Shubert and Smith refer to arrangements made between Shubert and Fields to procure the conversion of the play into a comic opera, the agreements themselves are not "offered in evidence"— i. e., not annexed to the papers, nor even completely described—and that therefore it may be assumed that they contain provisions directly authorizing Fields to contract with Herbert. Klein v. East River Elec. Lt. Co., 90 App. Div. 92–97, 86 N. Y. Supp. 164; Cushman v. De Mallie, 46 App. Div. 379, 381, 61 N. Y. Supp. 878.

The difficulty, however, is that plaintiff not merely fails to show that the comic opera "Old Dutch" was composed pursuant to the terms

of the contract, but, on the contrary, his own affidavit indicates and the opposing affidavits prove that it was not. This contract, as above recited, was executed in February, 1908. It provided that Herbert should write and compose the music of a comic opera, which was to be produced during the season, November, 1908, to May, 1909. It is difficult to see how the terms of this contract can be held to apply to the comic opera "Old Dutch," involved in the present controversy, which was not produced until November 6, 1909, and the libretto of which had not even been discovered by Shubert until the fall of 1908, six months after the execution of the contract.

I cannot, of course, anticipate what proof the plaintiff may present in substantiation of his claim that "Old Dutch" was composed by him pursuant to this contract; but on this motion for a preliminary injunction, and upon the papers submitted in support thereof, plaintiff's application must be denied.