EDWARD B. MARKS MUSIC CORPORA-
TION v. JERRY VOGEL MUSIC
CO., Inc.

No. 187.

Circuit Court of Appeals, Second Circuit.
Jan. 26, 1944.

See, also, D.C., 42 F.Supp. 859; 140 F.
2d 268; 140 F.2d 270.

Arthur E. Garmaize, of New York City,
for appellant.

Arthur F. Driscoll, of New York City,
for appellee.

Before L. HAND, CHASE, and
FRANK, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff appeals from a judgment,
dismissing its complaint after trial in an
action for the infringement of the copy-
right of a song. The infringement is
conceded, but the defendant justifies on
the ground that it is in equity a joint owner
of the copyright. The facts, which are
not in dispute, are as follows. In the year
1893, one, Edward B. Marks, composed
the words for a song entitled, "December
and May," which he took to a publisher
of songs, named Harding, who bought it.
Harding, without Mark's knowledge, en-
gaged one Loraine, to compose music for
the words, which Loraine did; and on
November 9, 1893, Harding duly complied
with the requirements of the then existing
copyright law, published the song, and
secured the copyright upon it as a "musical
composition." Marks and Loraine never
met until years later, and had not there-
fore worked in conjunction, except that
Marks intended the words to be set to
music which someone else should compose,
and that Loraine understood that he was
composing music for those particular
words.. On November 11, 1920, within the

year before the copyright expired, Marks applied for a renewal of the copyright upon the song as a "musical composition", and procured a certificate of renewal to himself as author; and this renewed copyright is now vested by assignment in the plaintiff. Loraine never applied for renewal, but he assigned all his rights in the song to the defendant on July 20, 1940.

We decided in Maurel v. Smith, 2 Cir., 271 F. 211, that if one of several authors took out the copyright in his own name upon a joint work, the copyright was valid, but the copyright owner held it upon a constructive trust for the other authors. This we extended to the renewal of a copyright in Silverman v. Sunrise Pictures Corporation, 2 Cir., 273 F. 909, 19 A.L.R. 289. Carter v. Bailey, 64 Me. 458, 18 Am.Rep. 273, turned upon the fact that there was no equity in the plaintiff's bill, but assumed that the co-tenant might be liable at law, as he always has been in equity (Minion v. Warner, 238 N.Y. 413, 144 N.E. 665, 41 A.L.R. 1412); it accords with what we have held. Hence, if the song was the joint work of Marks and Loraine, when Marks took out the renewed copyright, it was valid, but he held it upon a constructive trust for Loraine, as does the plaintiff, his assignee. There only remains to be decided whether the song was a joint work, or a "composite", as that phrase is used in §§ 23 and 24 of the Copyright Act, 17 U.S.C.A. §§ 23, 24. The plaintiff says that it was the second, and that therefore Marks could and did separately renew the copyright upon the words.

As we have said, the original copyright was of the song as a "musical composition," and the renewal was in the same terms, the work being described as a "song and cho." (song and chorus). So far as appears, Marks therefore never meant to renew the copyright for the words alone, though we will assume that that made no difference, if he was entitled to do so. He was not; the song was not a "composite" work, and it had to be renewed as a whole, or not at all, for it was the indivisible product of "joint authors." So far as we know, the first definition of "joint authorship" is in Levy v. Rutley, L.R. 6 C.P. 523: "a joint laboring in furtherance of a common design" (per Keating, J., p. 529); an agreement "to write a piece, there being an original joint design,"

(per Montague Smith, J., p. 530). This definition I accepted in Maurel v. Smith, D.C., 220 F. 195, when that case was before me in the district court, and we accept it now. If so, it makes no difference whether the authors work in concert, or even whether they know each other; it is enough that they mean their contributions to be complementary in the sense that they are to be embodied in a single work to be performed as such. That was the case here: Marks wrote the words as words for a song; Loraine composed the music as music for that song. It is true that each knew that his part could be used separately; the words, as a "lyric"; the melody, as music. But that was not their purpose; the words and the music were to be enjoyed and performed together; unlike the parts of a "composite work," each of which is intended to be used separately, and whose only unity is that they are bound together. This comports also with the practical aspects of the situation, as I observed at some length in Maurel v. Smith, supra, 220 F. 195. The popularity of a song turns upon both the words and the music; the share of each in its success cannot be appraised; they interpenetrate each other as much as the notes of the melody, or separate words of the "lyric." The value of the privilege of renewal is measured by the survival of their combined power to please the public taste. To allow the author to prevent the composer, or the composer to prevent the author, from exploiting that power to please, would be to allow him to deprive his fellow of the most valuable part of his contribution; to take away the kernel, and leave him only the husk. It is quite beside the point that, if the first part is composed without any common design, its author retains power to forbid publication of the joint work. Whatever popularity the second author's contribution may have added to the first's, which will survive their divorce, he must be content to release to the first author; whatever popularity his own contribution has gained from the association, he must be content to lose. Not so, when both plan an undivided whole; in that case unless they stipulate otherwise in advance, their separate interests will be as inextricably involved, as are the threads out of which they have woven the seamless fabric of the work.

Harris v. Coca-Cola Co., 5 Cir., 73 F.2d 370, is easily distinguishable on the facts.

The copyright of the first edition, which contained the Church and Moser pictures, expired on November 23, 1908, and was renewed on August 12, of that year; the renewal would have been invalid to extend the copyright of the edition of August 27, 1895. It is true that the court refused to pass on that question, but still the opinion lends no color to the plaintiff's position; for, even though Harris could be said to have composed the script in a joint design with Church and Moser, he clearly could not then have had in mind Frost's illustrations, made fifteen years later. Though he may have been a "joint author" with Church and Moser, he was not with Frost, for there was no change in the text.

For the foregoing reasons we hold that, when Marks took out the renewal of the song, he took it for the benefit of himself and Loraine, and that the legal title which he so acquired he held in trust for Loraine and Loraine's assignee. If so, he could not forbid that assignee from exploiting the subject matter of their right. This appeal does not raise the question whether each might call the other to an accounting, bringing his own profits into hotchpot.

Judgment affirmed.