## SHAPIRO, BERNSTEIN & CO. Inc. v. JERRY VOGEL MUSIC CO. Inc.

District Court, S. D. New York.
May 29, 1947.

House, Grossman, Vorhaus & Hemley of New York City (Leo J. Rosett and Alfred Beekman, both of New York City, of counsel), for plaintiff.

O'Brien, Driscoll, Raftery & Lawler, of New York City (Arthur F. Driscoll, Milton M. Rosenbloom, and William S. Roach, all of New York City, of counsel), for defendant.

BRIGHT, District Judge.

Plaintiff's second cause of action and the amended answer put in issue (1) the copyright of the unpublished song and lyrics "Melancholy", the song of which was written by Burnett and the lyrics by Watson in 1911 and copyrighted on October 13, 1911;

(2) the copyright of that song and new lyrics composed by Norton in 1912, and then transferred to Bennett; and (3) the third version of that song under the name of "My Melancholy Baby", published in 1914, which contained Burnett's music, Norton's lyrics, and an additional chorus in march time.

The trial court found that Burnett and Watson registered their claims for renewal rights in the 1911 version, and Burnett in the 1912 and 1914 versions; that plaintiff also registered claim to renewal rights in the 1914 version; and that Charles Norton, a son of George Norton who wrote the new lyrics in 1912, also applied for renewal rights in the 1914 version. It decided that renewal rights of the Norton lyrics were lost because of the failure of any person entitled thereto timely to file claim therefor, and that plaintiff owned the renewal rights to both titles and to the music of Burnett.

The judgment adjudicated title in the plaintiff to the title, music and lyrics of the song "Melancholy" of 1911, in the music of that song as published on October 25, 1912, and in the music and title of "My Melancholy Baby" published November 5, 1914; that there was no copyright protection in the United States for the Norton lyrics, published in 1912 under the title "Melancholy", and again in 1914 under the title "Melancholy Baby", which were held to be in the public domain; enjoined defendant from publishing and selling the song under either name, except the Norton lyrics, and dismissed its counterclaim seeking joint ownership of the copyrights of the song and lyrics by Norton and an accounting.

Defendant appealed from that part of the judgment in favor of plaintiff and which dismissed its counterclaim, "all of which more specifically is contained in paragraphs 3 to 12 inclusive of the judgment", to which reference is made in the preceding paragraph. The opinion of the Circuit Court of Appeals, 2 Cir., 161 F.2d 406, 411, states that on appeal the appellant did not question the ruling that plaintiff was the proprietor of the renewed copyright of the unpublished song of 1911; that defendant did challenge the ruling that Burnett's **renewal**

of the 1912 copyright was ineffective and that the Norton lyrics were in the public domain, and on the appeal claimed ownership with the plaintiff in the renewal of the 1912 copyright; and as to the third version of the song, wrote: "A third version of the song was published and copyrighted by Bennett on November 5, 1914 under the title 'My Melancholy Baby'. This version was composed of Norton's words and Burnett's music, with an added chorus in march time. During the final year of the copyright term, claims for renewal were made by Burnett, who assigned his renewal to the plaintiff, and by Norton's son, who assigned his rights to the appellant. The district court held the son's attempted renewal invalid and ruled that the plaintiff was the proprietor of the renewed copyright in the music and the title of the 1914 version but that no copyright protection exists for Norton's lyrics again published in that version. The appellant raises no question as to the 1914 renewal."

The Circuit Court of Appeals decided, as to the 1912 version, that Bennett had obtained a valid copyright, that Burnett and Norton were joint owners thereof, that Burnett's renewal, assigned to the plaintiff, inured to the benefit of both plaintiff and Norton's son, whose interest passed to defendant by the latter's assignment.

A motion was thereafter made for a clarification by the Circuit Court of Appeals of its decision with respect (1) to the ownership of the renewal copyright of 1914 on the musical composition "My Melancholy Baby"; and (2) whether the co-owners of the renewal copyrights on the 1912 and 1914 versions of the work should account each to the other.

The Appellate Court decided that the district judge was permitted to enter any judgment consistent with the opinion rendered, and might consider whether the 1914 version was "a 'joint work' and a 'new work' and whether the principles enunciated with respect to the 1912 version are likewise applicable to the 1914 version, and he may act accordingly." It further ruled that the question whether one of two joint owners of a copyright can have an accounting against the other merely because the

other has used the copyright was not discussed on the appeal, and it did not wish to determine it without an opinion by the district judge.

It is now determined that the Norton lyrics copyrighted in 1912 are not in the public domain, and that Burnett's renewal of that copyright, he being a joint owner with Norton, because of the death of Norton prior to renewal, inured to the benefit of Burnett and Norton's son and their successors in interest.

The 1914 copyright was of the same song composed by Burnett, and the same lyrics written by Norton as registered under the 1912 copyright, and the published musical composition gave credit for the words to Norton and for the music to Burnett. The only new matter was the change of name from "Melancholy" to "My Melancholy Baby", there was added an additional chorus in march time, the original chorus being in common time; and the base of the accompaniment was changed in some few respects. The tune and lyrics remained identically the same as in the Burnett and Norton compositions.

■ If, as held by the Circuit Court of Appeals, Burnett and Norton were joint co-authors of the 1912 composition, certainly they were of the 1914 version,, for the music and lyrics were identical; and the same result would follow as to renewal for both. But the 1914 copyright would have validity only if the composition then registered was a "new work" within the meaning of Section 6 of the Copyright Law, 17 U.S.C.A. § 6. The change in time of the added chorus, and the slight variation in the base of the accompaniment, there being no change in the tune or lyrics, would not be "new work". Jollie v. Jaques, Fed.Cas. No. 7,437, 1 Blatchf. 618; Cooper v. James, D.C., 213 F. 871; Fred Fisher v. Dillingham, D.C., 298 F. 145, 148; Norden v. Oliver Ditson Co., D.C., 13 F.Supp. 415. All that remains is the change in title, which, under the instant circumstances, would not add anything. Jollie v. Jaques, supra; Becker v. Loew's Inc., 7 Cir., 133 F.2d 889, 893, certiorari denied 319 U.S. 772, 63 S.Ct. 1438, 87 L.Ed. 1720; Corbett v. Purdy, C.C., 80 F. 901; Arnstein v. Porter, 2 Cir., 154 F.2d 464, 474; Newcomb v. Young, D.C., 43 F.Supp. 744, 745.

■ Plaintiff further claims that it is the sole proprietor of the renewal copyright of the 1911 version, of which Burnett and Maybelle E. Watson were co-authors; that as the song was the same in the 1912 version Burnett, Watson and Norton were co-authors of that composition; and that as plaintiff is the successor in interest of Burnett and Watson, and defendant of the Norton interest, in the 1912 copyright, plaintiff is the owner of a two-thirds interest therein and defendant of the remaining one-third. I cannot see it that way. The co-owners of the 1912 version, it has been decided, were Burnett and Norton. Burnett alone renewed, and it is now determined that he did so for both, and that Norton's son was his co-owner. When he renewed, he renewed the whole work, not just the song part; "it was the indivisible product of 'joint authors'" Edward B. Marks Music Corporation v. Jerry Vogel Music Co., 2 Cir., 140 F.2d 266, 267, and reiterated by the Circuit Court of Appeals in this case. Plaintiff, concededly, succeeded to Watson's rights in the 1911 copyright renewal. If she had any rights or property in the 1912 renewal, it was through Burnett, and of that plaintiff is the owner. Burnett was either the owner of a one-half interest in the 1912 composition, or else Burnett and Watson were the owners of that half; Watson had no interest in the 1912 renewal except through Burnett. In either case plaintiff, successor in title of Burnett in the 1912 renewal has no more than a half; and the same would hold if Watson's interest is recognized. Both would own no more than a half, and defendant, the successor in title of Norton, the other half.

■ The remaining question is whether the parties should account each to the other for their, or either of their, transactions in the 1912 renewal. I think they should, and by so holding I do not intend to decide the basis on which the ultimate awards shall be made. I leave that apportionment to the special master.

■ It has been decided that co-owners of a copyright are tenants in common of an

incorporeal personal right, and as such may not compel accounting one to the other. Carter v. Bailey, 1874, 64 Me. 458, 463, 18 Am.Rep. 273. A similar determination has been made as to patents, the alleged analogy to which is in part the basis of the Carter-Bailey decision. Drake v. Hall, 7 Cir., 1914, 220 F. 905; Blackledge v. Weir & Craig Mfg. Co., 7 Cir., 1911, 108 F. 71. See also McDuffee v. Hestonville, etc., Ry. Co., 3 Cir., 1908, 162 F. 36, and Talbot v. Quaker-State Oil Co., 3 Cir., 1939, 104 F.2d 967.

I do not find, and have not been referred to, any decision of the Supreme Court upon the subject.

Accounting was directed in Maurel v. Smith, 2d Cir., 1921, 271 F. 211; and recognized in Klein v. Beach, D.C.N.Y., 232 F. 240, 247, affirmed 2d Cir., 1917, 239 F. 108 and Crosney v. Edward Small Productions, D.C.N.Y., 52 F.Supp. 559, 561. See also Brown v. Republic Productions, Cal.App., 156 P.2d 40, 41, affirmed, 26 Cal.2d 867, 161 P.2d 796.

We are dealing here with a renewal of a copyright by one of the co-authors; and it is settled that he renewed as constructive trustee for the other co-owner. Dealing then with the property of both, his successor in title owed some duty to the other, which I think can well be defined as an equitable one. Instead, however, it assumed the position that the other had no rights; and brought this action, not only to declare that the other had none, but also to restrain the other from using or asserting them, alleging that it had given notice of its objections in that respect. It also asserts that it alone is entitled to the benefits and advantages, and as well to damages against the other, for whatever it may have done in defiance or contrary to plaintiff's alleged ownership. It is obvious that plaintiff has excluded, or at least claimed the right, and has tried, to exclude its co-owner from the common property. I do not understand that any tenant in common ever had or has that right, and its assertion of that right and, as here, its use of the joint property, has thus rendered it liable to account. If my understanding of the tenancy in common rule, as applied to tangible real and personal property, is correct, it protected a co-tenant from accountability when he used the common property himself, without excluding the other co-owners, but not when he permitted its use by others and reaped a personal benefit therefrom.

I go further. Since Carter v. Bailey much water has gone over the dam. The radio, broadcasting, motion pictures, name bands, and other entertainment, have developed by leaps and bounds, faster, it seems, than the supply of new songs and other music can meet the demand. The old ballads, even the classics, are now used in modernized versions. The public is presently entertained by the old classics and tunes in syncopated rhythm, in jazz, in theme songs, and in various new times and arrangements. The "blue" era in music may have had much to do with the claimed popularity of the old "Melancholy", now parading as "My Melancholy Baby". The potentialities of motion pictures, radio, the "plugging" by torch singers, crooners, popular orchestras and bands, have obviously changed the picture as it existed in 1874. And the benefits to be derived from these changed and changing times, let alone any prediction of what the future holds, justifies, I think, a new conception of the rights of joint owners of copyright. I have been wondering if Judge Learned Hand may have had something of the kind in mind in his criticism of Carter v. Bailey in the Marks case at page 267 of 140 F.2d.

Carrying out the thought of the last paragraph, it seems reasonable that copyright business, in songs at least, indulged in by one co-owner, practically precludes the other from a like use. The use of one owner, by license or personally, in motion pictures, on the stage, by radio, in advertising, in bands or orchestras, can destroy, practically, the copyright so far as the other is concerned. It has been said that copyright, being an incorporeal right, cannot be destroyed. But its broad use by an active publisher can so far exhaust the popularity of a song, or any other musical composition, as to destroy its value after that use has ended. And the destruction of value of a copyright is, in effect, a destruction of the copyright.

The subject has been admirably treated by Gilbert T. Rothblatt, of the Columbia Law School '40, in his monograph entitled

"Co-ownership of Copyright", and need not be further discussed. I cannot but believe that Congress had some similar idea when it gave authors, or their lineal descendants, the right to renew, notwithstanding whatever they had signed or done during the original life of the copyright. It could not have intended to give to such descendants rights to renew an empty shell, the kernel of which was claimed and pre-empted by the proprietor of another part.

A decree may be presented, to be settled on notice, and containing findings and conclusions, in accordance with the foregoing.