## YARDLEY v. HOUGHTON MIFFLIN CO., Inc.

District Court, S. D. New York.
Nov. 23, 1938.

Sidney S. Bobbe, of New York City, for plaintiff.

Cooper, Kerr & Dunham, of New York City (Thomas J. Byrne and Allan C. Bakewell, both of New York City, of counsel), for defendant.

WOOLSEY, District Judge.

My judgment is for the defendant herein which may have a decree dismissing the complaint, and giving it, on its counterclaim, a decree for the declaration and judgment therein prayed for.

The defendant may have costs which will include attorneys fee, to be fixed by me on petition of defendant's attorneys supported by affidavit.

I. My subject matter jurisdiction herein is based on the fact that this cause involves a question of alleged infringement of copyright. Title 28 United States Code, Section 41 (7), 28 U.S.C.A. § 41(7).

II. The facts sufficiently set forth for the purposes of this opinion are as follows:

A. On January 14, 1904, a contract was entered into between Thomas Cockrell & Son, hereinafter called the contractor, and the City of New York, by the Board of Education, acting through its Committee on Buildings, for the erection at Tenth Avenue and 59th Street, of a high school to be known as the DeWitt Clinton High School.

As I understand it, up to this time there had not been any attempt made to put decorative paintings in public schools. It was decided, however, to have some mural paintings in this high school building. These were to be painted and installed under the supervision and control of the Committee on Buildings and the Art Commission of the City of New York.

In pursuance of this plan, the contract contained the following provisions:

"That the contractor shall include in his estimate the sum of $3,500 for two paintings to be placed, one on either side of platform in the auditorium. The Committee on Buildings reserves the right to select and name the artist who shall execute the work, from among those of established reputation, who have satisfactorily executed similar works.

"That the artist so selected and named shall also put the pictures in place upon a surface suitably prepared therefor, by the contractor, who shall place a suitable moulding over the edge, etc.

"That the payments to the artist so selected shall be made by the contractor upon a certificate issued by the Superintendent of School Buildings, with the approval of the Committee on Buildings, to whose satisfaction the work shall be done. Any difference between the price agreed upon between the Committee on Buildings and the artist for the work, and the sum of $3,500 included and thus set aside by the contractor, shall be deducted from the amount of the contract."

B. Mr. Charles Y. Turner was selected to paint the two mural paintings required under the contract, and after conferences with the then Architect and Superintendent of School Buildings, Mr. Charles B. J. Snyder, as to the nature and size of the sketches for the murals, and, after the final approval thereof by the Art Commission of the City of New York, Mr. Turner finished the paintings, they were put in place, and Mr. Turner was paid for them.

C. One of the murals showed Governor Clinton and his wife on a flower decked canal boat en route from Buffalo to New York, and the other—with which alone we are here concerned—was called by the artist "The Marriage of the Waters of the Great Lakes with the Sea".

The symbolic act depicted by Mr. Turner occurred on November 4, 1825, and was thus described by Charles Rhind, Esq. in his report as Chairman of the "Committee on Arrangements for Celebrating the Union of the Waters of the Great Lakes with the Sea", as set forth in Cadwallader Colden's book "Completion of New York Canals", at page 196:

"His Excellency, Governor Clinton, then proceeded to perform the ceremony of commingling the waters of Lake Erie with those of the Atlantic. On board the Seneca Chief, two elegant kegs, beautifully painted in green with gilded hoops, were brought down, containing 'Water of Lake Erie'; from one of these the Governor poured a portion of the water into the sea; and after delivering a short, but very pertinent address, thus consummated the ceremony."

The selection of these subjects for murals for the DeWitt Clinton High School was obviously very appropriate, as they recorded what was perhaps the most important event in Governor Clinton's long service as Governor of New York State.

D. There was not any provision in the contract as to who should have the copyright of the paintings to be made.

There is not any evidence of any kind in the case as to any agreement on the subject of copyright between Mr. Turner and the contractors Thomas Cockrell & Son, or the City of New York.

There is not any evidence of any course of dealing between the parties from which any inference can be drawn as to whether the right to copyright the paintings was reserved by the artist.

E. On October 30, 1905, Mr. Turner copyrighted this painting "The Marriage of the Waters of the Great Lakes with the Sea", hereinafter referred to as "The Marriage of the Waters", under the following description:

"The Marriage of the Waters of the Great Lakes with the Sea, November 4th, 1825, at the formal opening of the Erie Canal October 26th-November 4th, 1825. Some twenty-five men grouped upon the roof of the cabin of a boat are interested in the final ceremony connected with the opening of the Erie Canal (etc.)".

This copyright expired on October 29, 1933, and was not properly renewed.

F. Mr. Charles Y. Turner died a resident of New York County on December 31, 1918, leaving a will naming as his executor George B. Class, Esq., who qualified under the will as executor and served continuously as executor from the 5th day of September, 1919, until January 30, 1937, when he was duly discharged of his duties as executor by a decree of the Surrogate of New York County.

G. On November 17, 1932, the plaintiff applied, as next of kin, for and obtained in her own name, the issuance of a renewal certificate for the copyright of the said painting "The Marriage of the Waters".

At this time Mr. Class was acting as executor of the estate of Charles Y. Turner.

Consequently, Mrs. Yardley, the plaintiff, who was a sister—and at this time only one of the several surviving sisters of Mr. Turner—did not, under Title 17 United States Code, Section 24, 17 U.S.C.A. § 24, have any right to secure the renewal of the copyright and such renewal, therefore, was wholly void and of no effect*.

H. Although on the basis of this renewal the plaintiff has settled with at least one person who had published reproductions of the picture "The Marriage of the Waters", she apparently was later advised that she had not any rights under the renewal of the copyright, and, thereafter, on February 7, 1937, after the copyright of the picture had expired, she secured an assignment from Mr. Class, the executor of Mr. Turner's estate, of all his right, title and interest in the copyright of certain works specifically listed in the assignment, and in all renewals or extensions of said copyrights, and of all rights of action for infringement, past or present, of the copyrights listed.

Among the list of copyrights was the copyright of October 30, 1905, of "The Marriage of the Waters".

The difficulty that arises in this situation is that this assignment occurred after the expiration of the copyright of this picture, and, consequently, if it conveyed anything, it conveyed only a bare right of action for a past infringement. Assuming that was possible, the fact that it was done by the executor must be shown.

The foundation of this assignment was a decree of the Surrogate of New York County, dated January 30, 1937, of which the part here relevant provided as follows (italics mine): "And it is further ordered, adjudged and decreed that George B. Class as Executor aforesaid execute and deliver any and all instruments, at the cost and expense, however, of Alice T. Yardley, as may be necessary to transfer to Alice T. Yardley all *existing copyrights of decedent and rights to renewal of those that are re-*

---

* The Copyright Act, Title 17 United States Code, Section 24, 17 U.S.C.A. § 24, provides: "The copyright subsisting in any work on July 1, 1909, may, at the expiration of the term of twenty-eight years from the time of recording the title thereof as provided by former law, be renewed and extended by the author of such work if still living, or the widow, widower, or children of the author, if the author be not living, or if such author, widow, widower, or children be not living, then by the author's executors, or in the absence of a will, his next of kin, for a further period of twenty-eight years. If the work be a composite work upon which copyright was originally secured by the proprietor thereof, then such proprietor shall be entitled to the privilege of renewal and extension granted under this section: Provided, That application for such renewal and extension shall be made to the copyright office and duly registered therein within one year prior to the expiration of the existing term."

*newable,* including all benefits that have been and may hereafter be derived therefrom, and *all rights of action,* if any, *thereon,* without recourse in any event as against the assignor, the sale of all of which to the said Alice T. Yardley for $25, being hereby ratified and approved."

■ I do not think that the decree of the Surrogate of New York County can be considered to have authorized the transfer by the executor to the plaintiff of any right of action for the copyright here in question, for it was not an "existing" copyright, and the rights of action to be transferred were limited to those involved in "existing" copyrights.

It does not seem to me, therefore, that the plaintiff has made out any locus standi to maintain this cause of action.

■ III. If, however, I am wrong on this question, I think the plaintiff must fail for the reason that Mr. Charles Y. Turner never had any right to get a copyright in the picture "The Marriage of the Waters".

The contract under which the picture was painted is—as above noted—wholly silent as to the question of the reservation of copyright by the artist.

■ When a man, hereinafter referred to as a patron, contracts with an artist to paint a picture for him, of whatever nature it may be, the contract is essentially a service contract, and when the picture has been painted and delivered to the patron and paid for by him, the artist has no right whatever left in it.

■ Whilst the artist in such a case may by contract reserve the right of reproduction, and so reserve his right of copyright, Werckmeister v. Springer Lithographing Co., C.C., 63 F. 808, 809, if the sale is not shown to have been thus limited, the patron becomes the sole owner and has all the rights in the picture, including the right to reproduce it, and the artist employed to make the picture cannot derogate from his patron's rights by taking out a copyright thereon without his patron's permission.

The fact that Mr. Turner took out a copyright herein is not a basis for an inference that the patron gave him such permission, especially when the patron—as did the Board of Education here—habitually sold post card reproductions. Dielman v. White, C.C., 102 F. 892, 895.

This principle seems to have been applied to the case of persons employed to write for encyclopaedias, magazines or papers by the English Courts. Cf. Lawrence & Bullen, Ltd., v. Aflalo and Cook, [1904] A.C. 17, in which the House of Lords approved the decisions of the Court of Appeal in Lamb v. Evans, [1893] 1 Ch. 218, 227, 228, and of the Court of Common Pleas in the case of Sweet v. Benning, [1855] 16 C.B. 459, 484, 489.

Indeed, I think that the whole matter is, perhaps, best summed up by Mr. Justice Maule in the last named case at 16 C.B. 484, where he says: "But, though no express words to that effect are stated in this special case, I think, that, where a man employs another to write an article, or to do anything else for him, unless there is something in the surrounding circumstances, or in the course of dealing between the parties, to require a different construction, in the absence of a special agreement to the contrary, it is to be understood that the writing or other thing is produced upon the terms that the copyright therein shall belong to the employer. * * *"

To recapitulate in the light of this statement:

■ In the present case, there is no course of dealings shown indicating that the copyright should have remained with Mr. Turner. There was no special agreement or term of contract that it should remain with him, and, consequently, I think that the City of New York, when it paid for the mural, became vested with all the right and title in it including the right to reproduce. Consequently, the title to the copyright which Mr. Turner secured was held in trust by him for the City of New York.

■ It follows from this that when leave by the Board of Education of the City of New York was given to the defendant to reproduce this picture "The Marriage of the Waters" in the "History of United States" by William B. Guitteau, and "History of Our Nation" by Chapman & Whitney, the defendant got leave from the person who was actually entitled to give such leave, and the publication of the picture in those history books did not constitute an infringement, of which the plaintiff, even if she had succeeded in obtaining a locus standi in this cause of action, would be in a position to complain.

■ IV. The defendant's attorneys must make application, on petition supported by affidavit, for the attorneys' fee which I have granted under the authority of Section 40

of the Copyright Act, 17 U.S.C.A. § 40, as part of the costs herein.

I shall determine the basis of this charge in accordance with the canons of charges which I suggested in the case of In re Osofsky, D.C., 50 F.2d 925.

There will, of course, be only a single attorneys fee which will cover the dismissal of the complaint and the judgment for the defendant on the counter-claim.

V. Both parties submitted proposed findings of fact and conclusions of law. I am sending them both back to the respective attorneys.

The defendant's proposed findings may be returned corrected in accordance with my opinion. I think they were not in very good form. The conclusions of law should be numbered separately from the findings of fact.

The defendant's findings of fact and conclusions of law must be submitted to me for signature through the Clerk's office with five days' notice to counsel for the plaintiff who on the return day of such notice must submit any suggested findings, or, better still, criticisms of the findings of fact and conclusions of law proposed by the defendant's counsel, if the plaintiff's counsel does not consider them to be in accordance with my opinion.

All proposed findings submitted by either party *must be typed in triple spacing* so that I may conveniently correct them if I wish to do so.

Only the findings of fact and conclusions of law which I sign will be filed as part of the record herein.

VI. Not until after the findings of fact and conclusions of law are submitted and the attorneys fee fixed and the costs taxed, may the defendant submit a final decree on the dismissal of the complaint and on the counter-claim.