**SHAPIRO, BERNSTEIN & CO., Inc., v. JERRY VOGEL MUSIC CO., Inc.**

No. 29, Docket No. 20280.

Circuit Court of Appeals, Second Circuit.

Dec. 10, 1946.

On Clarification of Opinion March 18, 1947.

Writ of Certiorari Denied May 5, 1947. See 67 S.Ct. 1310.

O'Brien, Driscoll & Raftery, of New York City (Arthur F. Driscoll and Milton M. Rosenbloom, both of New York City, of counsel), for appellant.

House, Grossman, Vorhaus & Hemley, of New York City (Leo J. Rosett, Joseph Fischer, and Alfred Beekman, all of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This litigation involves the ownership of the renewals of three copyrights of a popular song. In 1911 Ernie Burnett wrote the music and Maybelle Watson, who was then his wife, wrote the words of a song entitled "Melancholy." This song was copyrighted on October 31, 1911, in Burnett's name as an unpublished work under section 11 of the Act of 1909, 17 U.S.C.A. § 11. This version of the song was never published. During the final year of the copyright term, Maybelle Watson, who was then Mrs. Bergman, as author of the words, and Mr. Burnett, as author of the

music, renewed the copyright pursuant to section 23, 17 U.S.C.A. § 23, and assigned their respective renewals to the plaintiff. The district court held that the plaintiff was the proprietor of the renewed copyright of the unpublished song. The appellant does not question this ruling.

In 1912 Burnett offered to sell the unpublished song to Theron C. Bennett, a musical publisher. Mr. Bennett liked the melody but not the words of the song. With Burnett's consent Bennett engaged George A. Norton to write new words. Norton did so,[1] and by a document dated September 23, 1912, assigned his lyrics to Bennett "for the original copyright term together with all renewals or extensions of said copyrights thereof."[2] By an assignment which carried the statement, "Lyrics now by Geo. A. Norton," Burnett transferred to Bennett the 1911 copyright. Being thus the owner of Burnett's music and Norton's words, Bennett published the song on October 25, 1912 with the following copyright notice:

"Copyright MCMXI by Ernie Burnett

"Copyright transferred MCMXII to Theron C. Bennett, Denver, Colo."

On December 2, 1939, Burnett registered in the Copyright Office claim for renewal of copyright of the 1912 version of the song. He assigned the renewal to the plaintiff. The district court held that Burnett's renewal was ineffective and that the lyrics written by Norton are in the public domain. This ruling the appellant challenges, contending that Burnett's renewal was effective and inured to the benefit of Norton's son,[3] under whose assignment the appellant claims co-ownership with the appellee of the renewal copyright of the 1912 version of the song.

A third version of the song was published and copyrighted by Bennett on November 5, 1914, under the title "My Mel-

ancholy Baby." This version was composed of Norton's words and Burnett's music, with an added chorus in march time. During the final year of the copyright term, claims for renewal were made by Burnett, who assigned his renewal to the plaintiff, and by Norton's son, who assigned his rights to the appellant. The district court held the son's attempted renewal invalid and ruled that the plaintiff was the proprietor of the renewed copyright in the music and the title of the 1914 version but that no copyright protection exists for Norton's lyrics again published in that version. The appellant raises no question as to the 1914 renewal.

From a judgment declaring the rights of the plaintiff, granting an injunction against their infringement, dismissing the defendant's counterclaim, and awarding the plaintiff an attorney's fee of $1,000, the defendant has appealed.

The appellant claims no interest in the renewal of the 1911 copyright on the unpublished song. It does claim co-ownership with the plaintiff in the renewal of the 1912 copyright of the published song. This involves two questions, (1) whether Bennett obtained a valid copyright on the 1912 version, and (2) whether Burnett and Norton were joint authors so that Burnett's renewal of the 1912 copyright inured to the benefit of Norton's son and passed by the latter's assignment to the appellant.

As to the first question the appellee takes the position that the 1912 version was never validly copyrighted because the copyright notice published by Bennett was insufficient; hence the Norton words are in the public domain. In our opinion this contention cannot be successfully maintained. Section 6 of the Act, 17 U.S.C.A. § 6, provides that

"Compilations * * * or other versions of * * * copyrighted works when

---

[1] Contrary to the plaintiff's original contention, the court found that Norton was not "an employee for hire." This finding is not questioned.

[2] There is no contention that this assignment was effective to convey Norton's privilege of renewal, as he died several years before expiration of the copyright term leaving a surviving son in whom the

statute vested the privilege of renewal, 17 U.S.C.A. § 23. Compare Fisher Music Co. v. M. Witmark & Sons, 318 U.S. 643, 63 S.Ct. 773, 87 L.Ed. 1055, where the assignor survived the expiration of the original term of copyright.

[3] Norton had died before 1938 leaving a surviving son as his next of kin. Norton and his wife were divorced in 1907.

produced with the consent of the proprietor of the copyright in such works, * * * shall be regarded as new works subject to copyright under the provisions of this title; * * *"

Bennett was proprietor of both the old music and of the new words produced by Norton with the consent of Burnett. Assuming that this combination was entitled by section 6 to be copyrighted as a new work—a question hereafter discussed—then under section 9 of the Act, 17 U.S.C. A. § 9, all Bennett had to do to secure copyright was to publish it with the notice of copyright required by section 18, 17 U.S. C.A. § 18, and to deposit in the Copyright Office two copies of the published work as required by section 12, 17 U.S.C.A. § 12.[4] Section 18 provides that:

"The notice of copyright * * * shall consist either of the word 'Copyright' or the abbreviation 'Copr.', accompanied by the name of the copyright proprietor, and if the work be a printed literary, musical or dramatic work, the notice shall include also the year in which the copyright was secured by publication."

Bennett did not literally comply with these requirements: although his name appeared, the notice did not state directly that he copyrighted the song in 1912. His notice was of Burnett's copyright of the 1911 version and its transfer to him in 1912. Nevertheless it is apparent that he intended to copyright the 1912 version, for that was the song he was publishing. His intent being plain to copyright the published song, the fact that the notice impliedly attributed the authorship of both music and words to Burnett is, we think, irrelevant. Also irrelevant is the mistake in date, except as it may operate to cut down the term of the copyright.[5] Neither of these innocent errors misled the public to its prejudice, or failed to give it notice not to infringe. The purpose of a copyright notice is to prevent innocent persons who are unaware of the existence of the copyright from incurring the penalties of infringers by making use of the copyrighted work. See Fleischer Studios v. Ralph A. Freundlich, Inc., 2 Cir., 73 F.2d 276, 277, certiorari denied 294 U.S. 717, 55 S.Ct. 516, 79 L.Ed. 1250; Burrow-Giles Lithographic Co. v. Sarony, 111 U.S. 53, 55, 4 S.Ct. 279, 28 L. Ed. 349. The published notice was sufficient to inform a prospective copyist that Bennett was trying to get copyright protection for the published song to which he attached it. Had such a copyist looked up Burnett's copyright, he would have found that it protected an "unpublished song" with different words, but that ought not to have satisfied him that Norton's words were in the public domain; on the contrary, he would then have the more reason to believe that Bennett was trying to protect the song as published, and he should be chargeable with knowledge of such facts as reasonable inquiry would have disclosed. Such an inquiry addressed to Bennett would have disclosed that he was the proprietor of both Norton's words and Burnett's music and intended to obtain protection for the song as published. So we think the 1912 copyright was valid provided Burnett's music and Norton's words were a "new work" within the meaning of section 6.

The appellee takes the position that Burnett and Norton were neither co-authors nor collaborators. We think they were. The words and music of a song constitute a "musical composition" in which the two contributions merge into a single work to be performed as a unit for the pleasure of the hearers; they are not a "composite" work, like the articles in an encyclopedia, but are as little separable for purposes of the copyright as are the individual musical notes which constitute the melody. All this we expounded in Ed-

4 Bennett did not deposit copies of the song, but mere delay in making such deposit does not invalidate a copyright. Washingtonian Pub. Co. v. Pearson, 306 U.S. 30, 59 S.Ct. 397, 83 L.Ed. 470. Copies were filed on January 10, 1939 by a transferee from Bennett, and the certificate of copyright registration then issued was subsequently acquired by the plaintiff.

5 See Callaghan v. Myers, 128 U.S. 617, 657, 9 S.Ct. 177, 188, 32 L.Ed. 547; American Code Co. v. Bensinger, 2 Cir., 282 F. 829, 836; Southern Music Pub. Co. v. Bibo-Lang, D.C., S.D.N.Y., 10 F. Supp. 972, 974.

ward B. Marks Music Corporation v. Jerry Vogel Music Co., 2 Cir., 140 F.2d 266, where Marks composed the words which were to be set to music by some unknown composer. He sold the words to Harding who engaged Loraine to compose the music. We held that the combination was a "joint work", that Marks' renewal of the copyright was of the music as well as the words, although Marks and Loraine had never seen each other until long after the critical dates, and that when one of two joint authors obtains a renewal he holds it not alone for his own benefit but also as trustee for the other. The applicability of the Marks case becomes clear if we approach the situation at bar step by step. Suppose, for example, that after Burnett had composed the music, expecting his wife to write the words, she had died or changed her mind about writing the lyrics, and Burnett had then gone to Bennett and asked him to find someone to write the words. We submit that no court would hold that the fact that when Burnett composed the music he expected his wife to write the words, would make the actual song any less a "joint work" of Burnett and the lyricist found by Bennett. If that be true, it should make no difference that Burnett's original design to have his music combined with his wife's words was in fact realized. If the words and music of a song constitute a unitary work, as the Marks case held, then the 1912 version, composed of Burnett's music and Norton's lyrics, was a "new work" separately copyrightable from the 1911 version by the express terms of section 6, 17 U.S.C.A. § 6. It was also, as we have shown, a "joint work." Therefore, when Bennett united Burnett's music with Norton's words, either of the joint authors had the statutory privilege of renewal, and, if he did renew, he did so for both.[6]

■ There remains for consideration the question whether Burnett's renewal of copyright on the 1912 version was valid. This depends on whether it was timely. It was made on December 2, 1939, which was after the expiration on October 31, 1939, of the term of the 1911 copyright on the unpublished song. Because Bennett's notice of copyright on the published song gave the date of copyright as 1911 instead of 1912, the copyright on the published song cannot extend beyond December 31, 1939. See cases cited in note 5, supra. If it extended to that date the renewal was timely. If, however, it was cut down to the term of the 1911 copyright (October 31, 1939), the renewal was too late. The theory upon which a mistaken date in the notice can have any legal effect is that it may mislead the public as to the length of the monopoly. We can see no reason why the public should take one day in the year stated rather than another; in other words the public has no reason to assume that the work is in the public domain until the year has expired. This was the holding in Callaghan v. Myers, 128 U.S. 617 at page 657, 9 S.Ct. 177, at page 188, 32 L.Ed. 547. In that case, it is true, the date stated did not refer to an earlier copyright, while here it does. However, we think that an immaterial distinction, for anyone looking up the 1911 copyright would get notice that it did not cover the combination (words and music) of the published song. Since that was a "new and joint work" Burnett's renewal was valid.

■ The appellant's final complaint relates to the allowance to the appellee of an attorney's fee of $1,000. As the action arose under the Copyright Act an allowance of attorneys' fees was permissible, 17 U.S.C.A. § 40, despite the fact that a declaratory judgment was sought. See Yardley v. Houghton Mifflin Co., D.C., 25 F.Supp. 361, 364 (where attorneys' fees were awarded on the defendant's counterclaim for a declaratory judgment), affirmed, 2 Cir., 108 F.2d 28, certiorari denied 309 U.S. 686, 60 S.Ct. 891, 84 L.Ed. 1029. Upon remand of the cause the dis-

---

6 Silverman v. Sunrise Pictures Corporation, 2 Cir., 273 F. 909, 19 A.L.R. 289; Edward B. Marks Music Corporation v. Jerry Vogel Music Co., 2 Cir., 140 F.2d 266; Edward B. Marks Music Corporation v. Jerry Vogel Music Co., 2 Cir., 140 F.2d 270; Edward B. Marks Music Corporation v. Jerry Vogel Music Co., D. C., S.D.N.Y., 42 F.Supp. 859.

trict court will have discretion to deal with fees as it may think proper.

The judgment is reversed and the cause remanded for entry of a judgment consistent with this opinion.

On Clarification of Opinion.

PER CURIAM.

◼ Clarification of our opinion in the above entitled case, is sought, first, with respect to the ownership of the renewal copyright on the 1914 version of the musical composition entitled "My Melancholy Baby." After stating the District Court's ruling, we said: "The appellant raises no question as to the 1914 renewal." That sentence means merely that since the appellant's brief did not discuss the 1914 renewal we did not discuss it; nor shall we do so now. It does not follow, however, as the appellee urges, that the District Court's ruling as to the renewal of the 1914 version was left undisturbed and must be incorporated in the judgment to be entered on the mandate. We reversed the judgment and remanded the cause "for entry of a judgment consistent with this opinion." This permits the district judge to enter any judgment which he thinks consistent with our opinion. He may consider whether the 1914 version was a "joint work" and a "new work" and whether the principles enunciated with respect to the 1912 version are likewise applicable to the 1914 version, and he may act accordingly.

The second point on which clarification is desired is the right to an accounting between the co-owners of the renewal copyrights on the 1912 version and the 1914 version (if the same principles are found applicable to both). The question whether one of two joint owners of a copyright can have an accounting against the other merely because the other has used the copyright was never discussed on the argument of the appeal. It is a complex and difficult question which we do not wish to determine without the benefit of an opinion by the district judge before whom it will be argued.

Except for the foregoing clarification of the first point, the motion is denied.