Ruth E. **STRATCHBORNEO** d/b/a Cepha Publishing Co., Plaintiff,

v.

**ARC MUSIC CORP.** et al., Defendants.

No. 67 Civ. 2927.

United States District Court, S. D. New York.

March 23, 1973.

Tabak, Kurnit & Ruden by T. Lawrence Tabak, Robert Diskint, New York City, for plaintiff.

Mayer & Nussbaum, P.C., by Theodore Nussbaum, New York City, for defendants.

## OPINION

BRIEANT, District Judge.

Plaintiff, a citizen of California, brought this action on July 31, 1967, to enjoin infringement of plaintiff's copyrighted musical compositions and for an accounting of profits and damages resulting from past infringement. By an amended complaint, she also seeks damages for unfair competition, in the sale and exploitation of her musical compositions by defendants, which were allegedly "passed off" as owned by defendants.

Defendants' counterclaim charges infringement by plaintiff of its copyrighted musical compositions and unfair competition.

*Parties and Jurisdiction*

Defendants Arc Music Corporation ("Arc") and Dare Music, Inc. ("Dare") are New York corporations. Defendant McKinley Morganfield is a citizen of Illinois, who has performed professionally as a singer and musician in this District and throughout the country under his professional name, "Muddy Waters".

Defendant Preston Foster ("Foster") is a citizen of the State of New York and a resident of this District.

The Court has jurisdiction of this action as to the first nine counts, arising under the copyright laws of the United States, 28 U.S.C. § 1338, and has pendent and diversity jurisdiction over Count X in the Complaint, alleging unfair competition.

## What is MOJO?

An understanding of this litigation requires first that we define "MOJO". MOJO is a collective noun used to describe one or more talismanic objects believed to have power intrinsic to their nature, and believed able to impart power, or ward off evil or misfortune by being worn close to the body of, or possessed by, the person to whom the MOJO appertains. A simple example of MOJO would be a rabbit's foot. Other examples of MOJO, mentioned from time to time in the trial record, include such amulets as black cat bones, shrunken heads, lodestones, half dollar with seeds, four leaf clover, ashes, blacksnake skin, strands of hair and teeth. MOJO is often worn around the neck in a leather bag or carried on the person. MOJO may, in a pastoral society, be taken into the fields with the cattle.

Reliance on and belief in MOJO naturally leads to the conversational gambit, "Have you got your MOJO working?", or "I've got my MOJO working." A person approaching a crisis, such as an examination at school, would be sure to have his MOJO with him, and working.

Use of MOJO and reference to it in conversation and reliance on it, has been found generally among black people in the rural South. Although the expression "voodoo" has been used in the trial record, MOJO is different from voodoo.[1]

MOJO is a commonplace part of the rhetoric of the culture of a substantial portion of the American people. As a figure of speech, the concept of having, or not having, one's MOJO working is not something in which any one person could assert originality, or establish a proprietary right. See *infra*, p. 1404, et seq.

The expressions MOJO and "I've got my MOJO working", also have a lewd secondary or slang meaning. That double entendre will be most apparent in the lyrics of some of the musical compositions hereinafter referred to, particularly those of Bill Cosby (Ex. N) and Jimmy Smith (Ex. 10).[2]

## Plaintiff's Background

Miss Stratchborneo, plaintiff herein, was 32 years of age at the time of trial. Since 1959 she has been engaged under the trade name of Cepha Publishing Co., in publishing sheet music recordings and verse, arrangements, words and music for songs of the sort commonly described as "Pop Rock", in that portion of the music field called "Rhythm & Blues", or sometimes, just "R&B".

Prior to 1959, she worked as a singer and musician, performing in clubs, military installations, hospitals, prisons and other places, and was also employed during 1957 and 1958 by a record company.

She is a vocalist and dancer, has done some acting and recording and prior to 1959 assisted at a record publishing company, in teaching, vocalizing, choreography and selecting R&B tunes for release.

She has written so-called "lead sheets", whereby popular songs are merchandised, and whereby applications for copyright are made. She owns various record labels, including Tide, Edit and Colbert.

---

1. Voodoo, which evolved in Haiti, a former French possession, takes its name from the French "vaudois", practitioners of the Waldensian (Christian) heresy which arose in France *circa* 1170, and endured in remote areas of the Piedmont well into the 19th century. Animatism, or the attribution of soul-like qualities to objects and things, which is what MOJO is, is part of the religious heritage of all races.

2. See, *infra*, p. 1406 et seq.

Miss Stratchborneo stated that she had been familiar with MOJO during all her life, that in Borneo today, MOJO is used to the greatest extent, "where people will have MOJO in their fields . . where their cattle is, for their babies", (tr. p. 8).

*Origin of Plaintiff's (Triune/Bright) Musical Composition.*

During childhood, plaintiff had often versified about MOJO activity and had used the expression "I got my MOJO working". She sang a song containing the lyric versification "Got My MOJO Working", in 1955 in connection with a local television commercial for a California automobile dealer, and thereafter sang songs about MOJO with various verses at various times and places in California, at volunteer performances given for servicemen in hospitals, to prisoners, or wherever her services were welcomed.

In 1960, she wrote a lead sheet (Ex. 1) entitled "MOJO WORKOUT" (hereinafter for convenience, the "Bright" version). This contained the words "I got my MOJO working". The author listed on the lead sheet as having created the words and music is "Julian Bright a/k/a Larry Bright", but I am satisfied that in fact Larry Bright was not the author of "MOJO WORKOUT".[3]

Shortly thereafter, in about 1960, plaintiff created a new lead sheet, also entitled "MOJO WORKOUT" (Ex. 2), bearing the inscription "words and music by Triune-Bright". Triune is a name used by plaintiff and two other persons; Miss Paula Sapp a/k/a Paula DePores and Mrs. Orena Fulmer. These persons, acting in concert, describe themselves as "Triune". Sapp and Fulmer participated in some undisclosed manner with plaintiff in the creation of the second version of "MOJO WORKOUT," sometimes described for convenience as the "Triune-Bright" version.[4]

3. In seeking out intrinsic evidence of infringement, or copying, or the passing off of an artistic work such as this, we do not look solely to the lyrics. As held in Shapiro, Bernstein & Co. v. Jerry Vogel Music Co., 161 F.2d 406, 409 (2d Cir. 1946), cert. denied, 331 U.S. 820, 67 S.Ct. 1310, 91 L.Ed. 1837 (the Melancholy Baby case):

"The words and music of a song constitute a 'musical composition' in which the two contributions merge into a single work to be performed as a unit for the pleasure of the hearers; they are not a 'composite' work, like the articles in an encyclopedia, but are as little separable for purposes of the copyright as are the individual musical · notes which constitute the melody."

The lyrics of the Bright version were:
I got my mojo working
Well my mojo working
Well my mojo working
Well my mojo working
My mojo working but it just won't work on you.
You grab your little girl and spin her around
You grab both hands and holler out loud
You turn and turn till you're back to back
You move your feet and you don't look back.

You do the mojo workout
Well the mojo workout
You do the mojo workout
Till you just can't make no more.
You shuffle right and back and hold on tight
A boppin' and a hoppin' from left to right
You snap your fingers and turn all around
You do a little Chicken and you holler out loud.
Just do the mojo workout
Ah workout now
Yeah the chicken was never like this
Just one more think you gotta learn to do
You stomp and you romp and you do the googie goo
Wiggle and turn and away you go
That's the way you do the mojo.
You do the mojo workout
I mean the mojo workout
You do the mojo workout
Until you just can't make any more.
I got my mojo working
Well my mojo working
My mojo working.

4. The lyrics of the Triune-Bright version:
I got my mojo working but it just won't work on you
I got my mojo working but it just won't work on you

A registration of copyright was filed by Julian Bright a/k/a Larry Bright for "MOJO WORKOUT" on March 16, 1960. Such filing was effected by plaintiff. On August 31, 1966, an additional certificate of registration was filed with respect to "MOJO WORKOUT (Got My MOJO Working)". This filing was made by plaintiff and lists the three individuals constituting Triune as authors of new words and music. The 1966 registration was for "additional words and music" not found in the Larry Bright version, and for the first time, registered the Triune-Bright version.

There is also a third, Triune, version entitled "MOJO WORKOUT (GOT MY MOJO WORKING)", which purportedly was created January 4, 1960. This date is based upon a certificate by a California notary in the nature of an acknowledgement by plaintiff, DePores and Fulmer, attached by a staple to a lead sheet not otherwise filed or published.

I decline to find that this so-called Triune version was completed prior in time to the Bright version. The notary public was not produced before me, and there is no corroboration, or intrinsic evidence which demonstrates that this document existed prior in time to the Larry Bright copyright certificate filed March 16, 1960 in the Copyright Office. This issue, however, is not critical to the case.[5]

By an assignment dated March 27, 1960, and filed in the Copyright Office on February 20, 1964, Julian Bright

I found a gypsy woman and she told me what to do
She said grab your little girl and you spin her around
You grab both hands make her holler out loud
You turn and you turn till you're back to back
You move your feet and then you don't look back
(Refrain)
You do the mojo workout
Well, the mojo workout
You do the mojo workout till you just can't work no more
I got my mojo workin'
Well my mojo's workin'
Well now my mojo's workin'
Got my mojo workin'
Well now my mojo's workin' but it just won't work on you.
(2nd Verse)
She said son, take your mojo line them up against the wall
Son take your mojo line them up against the wall
She said son try the fat and skinny try them try them all
You shuffle right back and you hold on tight
A poppin and a boppin from 'er left to right
You snap you fingers and you turn around
You do a little chicken then you holler out loud
REFRAIN
She said go to New York City, Tallahassee, Chicagee
to see New York City, Tallahassee, Chicagee

Your mojo's looking good I think I'll let you try it on me
REFRAIN

5. The lyrics of the Triune version:
I got my Mojo working but it just won't work on you
I got my Mojo working but it just won't work on you
I found a gypsy woman and she told me what to do
I got my Mojo working, I got my Mojo working
I got my Mojo working child
I got my Mojo working, I got my Mojo working but it just won't work on you
She said go to New York City, Tallahasee, Chicagee
Go to New York City, Tallahasee, Chicagee
Yeah your Mojo is looking good
Think I'll let you try it on me.
She said son take your Mojo line them up against the wall
Son take your Mojo line them line 'em up against the wall
She said try the fat and the skinny, come on try them all.
I got my Mojo working, I got my Mojo working
I got my Mojo working child
I got my Mojo working, I got my Mojo working but it just won't work on you
She said go to New York City, Tallahasee, Chicagee
Go to New York City, Tallahasee, Chicagee
Yeah your Mojo is looking good
Think I'll let you try it on me.

a/ĸ/a Larry Bright assigned his interests in the "MOJO WORKOUT" copyright to plaintiff.

■ Bright recorded, and plaintiff released, or published, under the trade name "Tide Records" a 45 r.p.m. single, entitled "MOJO WORKOUT (Dance)". This record listed Julian Bright as the author and Larry Bright (actually the same person), as the performer. Cepha Publishing Co. was indicated thereon as the copyright owner.[6]

The Larry Bright record of 1960 unmistakably was derived from the two lead sheets, Bright version and Triune-Bright version, previously mentioned. It was released in March, 1960, and was played with some frequency during that year on various radio stations specializing in pop rock music.

Plaintiff designed a dance referred to as "Do The MOJO". The intricate steps of this juvenile diversion were written out with diagrams and distributed to the public by some of the record dealers (Ex. 8). Bright, a singer and guitar player who is white, came to be known as Larry "Mojo" Bright. See publicity still photograph, Ex. 9. In the "Fabulous Forty Survey" of radio station KFWB in Los Angeles, California, "MOJO WORKOUT" appears as a "record heard first on KFWB". It was 33rd in popularity for the week ending April 16, 1960, 22nd for the week ending April 23, 1960, and 16th for the week ending May 7, 1960.

A trade publication "The Billboard", on June 6, 1960, showed "MOJO WORKOUT" as No. 2 in a list of 15, below the so-called "Hot Hundred", and on June 25, 1960, "Cashbox Top Hundred", a trade publication, showed the record as No. 96. Plaintiff also licensed "MOJO WORKOUT" to others to make recordings.

As damages were stipulated to be disposed of subsequent to the trial of the issues of this action, in the event an accounting should be directed, there was no proof received by me as to the profits realized from the sale of records, mechanical licenses, or the licensing of ra-

6. Certificates of Registration in the Copyright Office are *prima facie* proof of originality. Upon introduction into evidence of Bright's certificate and his assignment to plaintiff the burden of going forward shifted to defendants, who must prove the work was not original. Nimmer on Copyright (1972) § 139.2.

For present purposes, it is of no moment that plaintiff or Triune wrote it, but for marketing reasons, decided to file in Bright's name and take a simultaneous assignment. Bright was then under contract to plaintiff. See Picture Music, Inc. v. Bourne, Inc., 314 F.Supp. 640, 649 (S.D.N.Y.1970), aff'd. 2 Cir., 457 F.2d 1213 (1972), cert. denied, 409 U.S. 997, 93 S.Ct. 320, 34 L.Ed.2d 262.

In litigation she brought in California state court, against Bright and others, plaintiff signed an affidavit in May, 1960, suggesting that prior to the time, in early 1960, when Larry Bright signed an exclusive contract with Tide Records (Miss Stratchborneo), "several record companies listened to "MOJO WORKOUT" and Larry Bright, but none would undertake to release the record."

Plaintiff now states that this sworn allegation made to the California court was in error; that several people had listened to Larry Bright, but not to the record itself, "MOJO WORKOUT." The California affidavit of 1960 also indicated that plaintiff had purchased a master recording of "MOJO WORKOUT," and the reverse side "I WILL CHANGE MY WAYS", from a third party, through one John Blower.

Except to the extent that they pertain to credibility, these prior transactions are not material to the Court's view of this case.

Plaintiff now testifies that her organization cut a master recording of "MOJO WORKOUT," that Bright did not like it and went out and cut his own master. Plaintiff says she bought back the other master for $300.00 to protect her interest in "MOJO WORKOUT."

To the extent that this line of cross-examination eliciting prior inconsistent statements of plaintiff has any bearing on the case at all, it does not bear on plaintiff's proprietary interest in "MOJO WORKOUT." If Larry Bright wrote the song, and I do not believe he did, he filed the claim to copyright and duly assigned it to plaintiff. Defendants do not claim from, through or under Larry Bright or as his successors in interest.

dio performance, but the musical composition was of substantial economic benefit to plaintiff.

Plaintiff testified that the first notice she had of defendants' activities with respect to MOJO was when Jimmy Smith, in 1966, issued a record in the same market, recorded by him on Verve Records, a division of Metro, Goldwyn, Mayer, Inc., and entitled "Got My MOJO Working". This record indicates defendant Morganfield as the author, and defendant Arc as the proprietor of the work. It occupies both sides of a single 45 r.p.m. record and the label indicates that it was taken from an album entitled "Got My MOJO Working".

Plaintiff asked Verve Records to take a mechanical license, but Verve declined to do so, having already taken a license from Dare. This led to a demand and refusal, and this litigation eventuated.

Plaintiff testified that she had never heard any other professional renditions of "I've Got My MOJO Working" prior to 1966, and that no complaints or demands upon her had been made by any other record company, publishing company or performer.

Plaintiff did not perform "MOJO WORKOUT" as found in the Triune-Bright version or in the Larry Bright version prior to 1960. I decline to find that the Triune version was performed by or for her prior to March, 1960. She did, as heretofore noted, perform MOJO songs according to the same rhythm, using different words from time to time, and changed the words many times to suit the occasion. The expression "I've Got My MOJO Working" was, however, used by her in connection with a pop rock song beginning in 1955.

By her own evidence, plaintiff did not write the Triune version any earlier than Thanksgiving, 1959, or about January 4, 1960. On all of the evidence, I find that origin of the Triune version prior to the Bright version (Ex. 1), or prior to March, 1960, is not established.

Since 1955, plaintiff and her colleagues in Triune have always called their song "Got My MOJO Working", or "MOJO WORKOUT". The melody and rhythm never changed, but the lyrics changed many times.

In answers to interrogatories, plaintiff stated that she and Miss Sapp and Mrs. Fulmer completed the musical composition during January, 1960, after "working for a period of time" in Los Angeles.

They never filed a claim for copyright of the Triune version; they did claim copyright in Triune-Bright, as previously noted, on December 19, 1966, and plaintiff filed for the Bright version, in Bright's name on March 25, 1960.

*Origin of Defendants' (Foster) Musical Composition.*

Saul Rabinowitz, President and principal of defendant Dare, is presently engaged as an executive of CBS Records International and directs the operations of overseas music publishing firms controlled by CBS. He also has oversight of licensing recorded products from other companies for distribution overseas by CBS and advises with respect to products recorded by overseas companies. Formerly, he was principally engaged in the conduct of Dare's record business.

Rabinowitz first met defendant Preston Foster, also known as Red Foster, in 1957, at which time Foster visited him, offered for sale and played a number of songs. He sang a song, "I'VE GOT MY MOJO WORKING", accompanying himself by guitar, and played a demonstration record which he had previously recorded (Ex. F).

Foster, on October 29, 1956, had filed a claim to copyright for that song as author. On January 9, 1957, Dare entered into a mimeographed form publisher's contract with Preston Foster, by which it acquired "I've Got My Mo-Jo Working". By his agreement, Foster reserved a royalty and assigned his copyright. The assignment was recorded February 16, 1965 in the Copyright Office. In 1957, Dare also acquired the

Foster lead sheet and the demonstration record.

A month or two later in 1957, Rabinowitz played Foster's demonstration record for singer Ann Cole. Ann Cole learned the song and recorded her artistic arrangement or version of it for Baton Records, under license from Dare. This record is entitled "Got My Mo-Jo Working (But It Just Won't Work On You)", and lists Foster as the author. The Ann Cole record was released, at least prior to April 20, 1957, because "Cashbox", a trade publication, on that date, refers to the Ann Cole rendition as the "Cashbox R&B Sleeper of the Week".[7]

At about the same time, a record "Got My Mojo Working", sung by Muddy Waters, was issued by Chess Records. This also was referred to as a "sleeper of the week" in the same April 20, 1957 edition of Cashbox. Rabinowitz learned of the Muddy Waters rendition within two or so days after samples of the Ann Cole record had been released to distributors.

Rabinowitz testified that Miss Cole had just returned from a road tour with Muddy Waters' band. He concluded that she had been singing the song while on tour, and that Muddy Waters had liked it and recorded it, claiming authorship for himself. The Muddy Waters record bears a copyright credit for defendant Arc, and shows defendant McKinley Morganfield, the true name of Muddy Waters, as the author of the work, and "Muddy Waters" as the singer.

Rabinowitz asserted Dare's claim of ownership by reason of assignment to it of the Preston Foster copyright and made claim on Arc. This controversy was later settled by an agreement between Dare and Arc by which Arc, in effect, in consideration of a royalty interest in "Got My Mojo Working", conceded the validity of the Preston Foster copyright, ownership thereof by Dare, and infringement, although not so denominated. As between Dare and Arc, Dare was to be deemed for all purposes the owner of the song in dealing with third parties. Morganfield (Waters) was not a signatory to the settlement agreement (Ex. 26) between Dare and Arc.

Long prior to the release in March, 1960, of the plaintiff's Larry Bright record, "MOJO WORKOUT", and prior to March 25, 1960, when Larry Bright, as purported author filed claim to copyright, through plaintiff, defendants Dare, Arc, Foster and Morganfield were all asserting a property interest in and had recorded and marketed MOJO songs.[8]

---

7. This means "rhythm and blues sure shot", that is, a record which is predicted to be a best selling record in the near future in the opinion of the editors of *Cashbox*, and based on present sales activity and information known to the trade.

8. The lyrics of the Preston Foster "GOT MY MOJO WORKING" version are:

    Got my Mojo working but it just won't
      work on you
    Got my Mojo working but it just won't
      work on you
    I want to love you so till I don't know
      what to do
    I got my black cat bones all pure and
      dry
    I got my 4 leaf clovers all hanging high
    I got my Mojo working but it just won't
      work on you
    I want to love you so till I don't know
      what to do

I've got my hoodoo ashes all around
  your bed
Got my black snake boots underneath
  your head
Got my Mojo working but it just won't
  work on you
I want to love you so till I don't know
  what to do
I've got a gypsy woman giving me advice
I've got some red hot tips I have to
  keep on ice
Got my Mojo working but it just won't
  work on you
I want to love you so till I don't know
  what to do
I got my rabbit's foot, I know it's working
  right
I got your strand of hair, I carry day
  and night
Got my Mojo working but it just won't
  work on you

*Performance and Use by Others.*

Dare had licensed Verve Records, a division of Metro-Goldwyn-Mayer ("MGM"), to record and issue the 1966 Jimmy Smith version "Got My MOJO Working" (Ex. 10), and had received license fees from Broadcast Music Incorporated ("BMI") and from MGM.

Producers of other records licensed by Dare and BMI, as distributor of performance royalties, have withheld payment pending the termination of this litigation. Dare has also issued licenses to many other recording artists for "Got My Mojo Working", or "I've Got My Mojo Working". These include such well known record companies as Atlantic, Columbia, Capital, London and Liberty Records. Recording artists include Johnny Rivers, Sandy Nelson, Sam the Sham & The Pharaohs, Muddy Waters, Jimmy Smith, Art Blakey, Chico Hamilton, Carla Thomas, Lester Lanin, Manfred Mann, The Capitols, Conway Twitty, Columbus Smith, The Powers of Blue, The Knockouts, The Big Beats, Billy Hawks, Ben Bernay, Long John Baldry and Linda Gayle.

Dare and plaintiff have each received performance royalties from BMI. Rabinowitz explained that whether the computer tabulation credited the royalty to plaintiff, or to Dare depended on how the titles were reported; that the titles

"MOJO WORKOUT," "I'VE GOT MY MOJO WORKING" and "GOT MY MOJO WORKING" are so similar that "depending on how the radio station announces its use, that will govern BMI as to which publisher to pay" (tr. p. 203). This practical problem is, however, beyond the scope of this litigation.

*Infringement*

■ Proof of copying is basic to any claim of infringement. Idential works, which these are not, could, if independently created, each receive statutory copyright protection, and each withstand charges, by the other, of infringement. Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 54 (2d Cir.), cert. denied, 298 U.S. 669, 56 S.Ct. 835, 80 L. Ed. 1392 (1936).

*Access*

There is no direct evidence of access by Bright or Triune or plaintiff to Preston Foster's lead sheet, or demonstration record, or to the Ann Cole or Muddy Waters recordings, and likewise, no such evidence of access by Preston Foster, Ann Cole or Muddy Waters to the various versions of music and lyrics having to do with MOJO, which plaintiff was singing at hospitals, prisons and elsewhere, prior to 1957.

Defendants' position (tr. p. 464) is that the chronology of the discs and striking similarities in the lyrics and

> I want to love you so till I don't know what to do
> I've got lot's of mamas kneeling at my feet
> I've got a bag of tricks I know they can't be beat
> Yes my Mojo works but it just won't work on you
> I want to love you so till I don't know what to do
> Got my Mojo working but it just don't work on you.

The lyrics on Ann Cole's record are substantially the same as Preston Foster's, except that the last verse is omitted. The lyrics used by Muddy Waters vary. Represented is his single 45 r. p. m. version of "GOT MY MOJO WORK-ING" (Plaintiff's Ex. 19) :

> *Got my mojo working but it just won't work on you*

> Got my mojo working but it just won't work on you
> I want to love you so bad I don't know what to do
> Going down to Louisiana to get me a mojo hand
> Going down to Louisiana to get me a mojo hand
> I'm going to have all you women, getcha under my command
> Got my mojo working, got my mojo working, got my mojo working, got my mojo working, got my mojo working but it just won't work on you.
> *I got a gypsy woman givin' me advice*
> I got a gypsy woman givin' me advice
> I got a whole lots of tricks keeping here on ice

melody of the various records are such as to preclude coincidence, and that we should infer copying, intrinsically from a comparison of the records and their release dates.

Plaintiff also seeks to draw an inference of copying circumstantially from the records themselves, but her attempt is frustrated by her inability to prove existence and ownership of an identifiable version prior to March, 1960.

■ The only evidence of access by plaintiff is found in the fact that the Waters and Cole versions were sold widely in 1957 in the field of music in which plaintiff was engaged and were broadcast. This is the "reasonable opportunity to view or read plaintiff's work", which is all that is needed to show access. Bevan v. Columbia Broadcasting System, Inc., 329 F.Supp. 601, 605 (S.D.N.Y.1971); Blazon, Inc. v. Deluxe Game Corp., 268 F.Supp. 416, 422 (S.D.N.Y.1965). No evidence whatever of access by Foster, Cole, Waters or Rabinowitz to plaintiff's localized performances of prior MOJO songs is shown.

*"Striking" Similarity*

■ Even if access cannot be established by showing a reasonable opportunity for the alleged infringer to have seen or heard the complaining work, access, and also copying, may be inferred where the accused work is "strikingly similar" to a pre-existing complaining work. Arnstein v. Porter, 154 F.2d 464, 468–469, aff'd. on rehearing, 158 F.2d 795 (2d Cir. 1946). To prove that similarities are striking, claimant must demonstrate that such similarities are of a kind that can only be explained by copying, rather than by coincidence, independent creation, or prior common source. See Jones v. Supreme Music

Corp., 101 F.Supp. 989, 991 (S.D.N.Y. 1951).[9]

■ Expert testimony may and should be used to aid the Court in analyzing the works involved in order to draw the inference of copying from striking similarities. Arnstein v. Porter, *supra*, 154 F.2d at 468.

Plaintiff's expert, Mr. Reuben Phillips, is an accomplished musician. He is the music director of the Appollo Theatre in New York City, having held that position since 1952. Previously, he was a musician with various bands, including Andy Kirk, Lionel Hampton, Louis Jordan and Count Basie, and was a musical conductor with Eartha Kitt and Josephine Baker. He played saxophone with these bands and was a saxophone player in the Roxy Theatre house band. He is an experienced music arranger, and now writes original music, primarily in the area of rock and roll arrangements, for the house band at the Apollo Theatre.

Mr. Phillips, a black man, grew up in Providence, Kentucky. He had heard the lyric, or expression, "Got my MOJO working, but it just won't work on you" first during his childhood in that rural community. He describes MOJO as a phrase used in family relationships, in the context of "I'll put my Mojo on you", or "You got your Mojo with you today?". As a child he said that he wore MOJO around his neck, and used that kind of expression in conversations, with other children in his home town.

■ Plaintiff urges defendants may not rely on the Foster lead sheet, demonstration record and the Foster copyright registration because of technical deficiencies in the presentation as filed. The lyric is clear enough on Foster's lead sheet. Phillips, plaintiff's expert, admits that the first section of the lead

---

9. Many difficult problems are inherent in an attempt to prove access and copying circumstantially, from a playing and analysis of both of the musical compositions, which are the subject of conflicting claims of originality. An extremely useful and practical analysis of these problems, fully annotated to decided cases in this Circuit is found in a thesis entitled "Musical Copyright Infringement: The Requirement of Substantial Similarity" by Jeffrey G. Sherman, Esq. of the Minnesota Bar. This work is on file at Harvard Law School and is intended to be published shortly in Vol. 22 of ASCAP Copyright Law Symposium.

sheet is melodically the same as the music which appears on the Foster demonstration record and the Ann Cole record. In the second section, or refrain, only about two-thirds of the notes correctly track those recordings, but the similarity is very great. James J. Wisner, expert for defendants, expressed the opinion that Foster's lead sheet set forth most of the music and rhythm which Foster's demonstration record contained.[10]

Following the observation of the ordinary observer or audience member, the average reasonable man (Harold Lloyd Corporation v. Witwer, 9 Cir., 65 F.2d 1, 18), and giving due regard to the experts, I find that the various performers, including Foster, Cole, Waters and Smith, who claim to derive their versions from Foster's lead sheet, did in fact do so, but plaintiff's Larry Bright dance version, "MOJO WORKOUT," was not copied or derived from, nor is it strikingly similar to any of defendants' pre-1960 renditions or versions. Testimony by the experts that any version is "closer to" either contending source work is not the sort of analysis as will imply similarity sufficient to infer copying. In this genre of music and elsewhere, "only a few [permutations] are pleasing; and much fewer still suit the infantile demands of the popular ear". Darrell v. Joe Morris Music Co., 113 F. 2d 80 (2d Cir. 1940).

Nor, can we say from any evidence before us that Bright or plaintiff infringed the lyrics used prior to 1960 by any of defendants' artists. The whole concept of MOJO in the context used in these lyrics was so commonplace in 1957 as to be substantially within the public domain. In presenting a MOJO song in a dance version, and because of the obvious differences in the lyrics and music, I find that the Bright version did not infringe any of the defendants' versions.

### "Substantial" Similarity

In determining what part of a complaining work is protected by copyright, it must be remembered that the Copyright Act does not afford a monopoly over ideas. Morrissey v. Proctor & Gamble, 379 F.2d 675 (1st Cir. 1967); Nichols v. Universal Pictures Corp., 45 F.2d 119 (2d Cir. 1930); Northern Music Corp. v. King Record Distributing Co., 105 F.Supp. 393 (S.D.N.Y.1952). What copyright does protect is the original use of ideas, the "expression" of ideas. Therefore, substantial similarity cannot be established herein simply by showing that both the accused and complaining songs focus on the MOJO idea; each party to prevail must establish that the adverse party, in a material way, tracked his or her treatment of that idea.

Nor will substantial similarity be found if only a small, common phrase appears in both the accused and complaining songs; unless the reappearing phrase is especially unique or qualitatively important, there is no basis for inferring copying. See Heim v. Univer-

10. A certificate of registration from the Copyright Office is *prima facie* proof of originality. Upon introduction into evidence of Foster's certificate, the burden of going forward shifted to the plaintiff, who must prove Foster's work was not original. Nimmer on Copyright (1972) § 139.2.

Defendant Preston Foster, also known as Red Foster, attended parts of the trial. A Black man, about forty years of age, he appeared with bleached blonde hair and highly modish clothing. He sat quietly in the courtroom and did not, in my presence, communicate with counsel for either party. His presence was known to both parties, and neither counsel chose to call him as a witness.

The Court is now asked to infer from defendants' failure to call Foster to testify, that his 1957 copyright did not in fact represent his own original work, and that he could not so testify.

No reasonable basis exists for reaching such an inference, and the Court declines to do so. Foster's testimony was not required where plaintiff failed to establish copying by defendant. See *Nimmer, supra.*

sal Pictures, Co., Inc., 154 F.2d 480, 487 (2d Cir. 1946); Darrell v. Joe Morris Music Co., *supra*; O'Brien v. Chappel & Co., 159 F.Supp. 58, 59 (S.D.N.Y.1958). Indeed, common phrases are generally not susceptible to copyright protection. O'Brien v. Chappel & Co., *supra*.

■ Additionally, material that is in the public domain can be used by an author; substantial similarity is not met by noting the appearance of such material in the accused work. Sheldon v. Metro-Goldwyn Pictures Corp., *supra, cf.* Whitney v. Ross Jungnickel, Inc., 179 F. Supp. 751 (S.D.N.Y.1960). In the Whitney case, both the accused and complaining songs had, in effect, the same title and the identical first two lines; the first line was taken from the public domain. Despite the fact that plaintiff's song had been published, recorded, and performed, the Court declined to find that defendant's assignor had copied plaintiff's song.

■ Where, as here, words and music have been integrated in a single work, the copyright of such work as a musical composition will protect against unauthorized use of the words or lyrics alone, as well as against unauthorized use of the music alone or of a combination of music and words. However, in determining whether an accused, short popular song consisting of words and music, of the type involved herein, replicates the essence of a complaining work, initial focus should be placed on music and lyrics *taken together,* as necessary parts of the composition. See Shapiro, Bernstein & Co. v. Jerry Vogel Music Co., 161 F.2d 406, 409 (2d Cir.), cert. denied, 331 U.S. 820, 67 S.Ct. 1310, 91 L.Ed. 1837 (1947).

■ I find no infringement of plaintiff's "MOJO WORKOUT" by the 1966 Jimmy Smith record. Licensed by Dare, the latter is a reasonable artistic variation on the Preston Foster 1956 composition, as modified by the Cole and Waters versions. A licensee has the right so to alter a copyrighted work to suit his own style and interpretation.

Its source remains with defendant's prior use of the same song.

Aside from some similarities in the opening passages, the works sound, to the non-professional customer's ear, quite different from plaintiff's work. Even the first sections seem to convey different moods. The lyrics vary, and in Smith the secondary lewd meaning of MOJO is perhaps more apparent. No infringement is found of plaintiff's copyright by the Jimmy Smith 1966 record.

It follows from the foregoing that all parties to this litigation have the right to produce their respective different MOJO works. Plaintiffs may produce the dance, "MOJO WORKOUT," and songs which represent identifiable versions of it, or the Triune-Bright version. Defendant Dare and its licensees may continue to produce and use the musical composition reflected in the Foster lead sheets as originally performed by Foster, Ann Cole, Muddy Waters and Jimmy Smith.

The Court finds sufficient differences in the plaintiff's composition and the defendants' compositions to militate against finding of infringement, copying or passing off. The lyrics, where the greatest similarity occurs, relate to a matter which may not be appropriated, no more so than any other song of unrequited love or lust.

■ No evidentiary basis is found to sustain plaintiff's 10th cause of action for unfair competition, by "passing off". Plaintiff did not, nor could she, attain any right to secondary meaning, or the identification of the title, lyric or concept as plaintiff's work in the public mind. Defendants have not traded unlawfully or otherwise upon plaintiff's popularity or good will, or passed off any songs or musical compositions or lyrics as plaintiff's, to her damage. Nor have they succeeded in convincing the record manufacturing trade that plaintiff's musical compositions are owned or controlled by either Arc or Dare (Complaint, ¶95). Nor do I find

plaintiff guilty of any unfair competition or passing off of her song, as that of defendants.

The Court is not unaware of the difficulties created in this action by the problem of mechanical licenses of MOJO songs which others have recorded, or will. [17 U.S.C. § 1(e); American Metropolitan Enterprises of New York, Inc. v. Warner Bros. Records, Inc., 389 F.2d 903 (2d Cir. 1968).] In view of the extensive recordation of MOJO, and the instant dispute between plaintiff and Dare, apparently BMI has ceased the distribution of performance and mechanical royalties, pending the outcome of this litigation.

For example, Cosby performed a MOJO song which could have been performed as a non-infringing work and free of any royalty [cf. Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 54 (2d Cir.), cert. denied, 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936)]. Plaintiff apparently won a race and became the first to assert claim for license with Warner Bros. Cosby titled his song as "MOJO WORKOUT," with an authorship credit to Bright, and mechanical royalty to plaintiff.[11]

---

11. "Bill Cosby Sings 'Silver Throat'", a long-playing album issued ·by Warner Bros. after the 1966 Jimmy Smith record, took a mechanical license from plaintiff. One of the selections is entitled "MOJO WORKOUT" and lists, on the disk, "J. Bright" as author. Cosby's theme, his music, and the lyrics, except for the central ideas of MOJO, and travel, to Philly (Philadelphia) are entirely distinguishable from plaintiff's or defendants' compositions. Travel is an essential part of Muddy Waters (Louisiana), and Jimmy Smith (New York City), but not Cole or Bright. Triune, however, includes New York City, Tallahassee and "Chicagee", as places to which the MOJO user travels.

We could not infer Cosby as an infringer of any of the other musical compositions in the case, were that question before us, and in the absence of direct evidence of copying. Cosby's lyrics follow:

  I got my mojo working baby
  And I gotta try it on you—yes I am
    and you better believe me now
  I got my mojo working baby
  And I gonna try it on you—yes I am,
    here I stand when I fall
  Well I turned it on in Philly
  You should have seen the women go—
    yes they did
  You should have seen the women go—
    turning on the mojo—yes they did
  Well they threw their arms around me
    and they shouted—here's the man with
    the mojo—yes they did.
  Well my mojo is powerful
  Turn around and look at me—go ahead
    if you dare
  I said my mojo is powerful
  Turn around and look at me—if you
    dare go ahead

  When you see me baby you gonna fall
    right out the chair—yes you will
  And your arms will caress me
  Lips trying to find my cheek—yes they
    will workin' mojo
  I said your arms will caress me and
    your lips will find my cheek—yes you
    will, yes you will
  You're a victim of the mojo, I told you
    it would work, I repeat, I repeat.
  I've got my mojo working baby
  Told you it would be so wonderful
  Yes I did, come and go, yes I did
  I got my mojo ticked on, see how this
    woman fell—yes she did
  Well my mojo got her to the breach
    and we gonna go.
The lyrics of Jimmy Smith's "GOT MY MOJO WORKING" are:
(Part 1) I got my mojo working babe
  And I'm gonna try it on you—Oh yeah
  I got my mojo working babe
  And I'm gonna try it out on you—Oh
    yeah
  Well I tried in New York City
  Oh—now I'm gonna try it on you—Oh
    yeah.
  I got my mojo working baby
  And I'm gonna try it on you
  Oh roogalater
  I got my mojo working babe
  Yeah, yeah, yeah, I'm gonna try it on
    you
  Well I tried in New York City
  Oh I'm gonna try it on you
  Oh yeah—work my rooster
(Part 2)
  I got my mojo, mojo working baby
  Yeah oh yeah
  I got my mojo working baby
  And I'm gonna try it out on you
  N'oh yeah
  Well I tried in New York City
  O ha ha O ha ha—out

We find no situation where defendants licensed a work clearly derived by copying, or as an alteration in style or arrangement of "MOJO WORKOUT." Records or performances of its song, licensed by Dare, should be readily separable by BMI and the licensees, from those performances, if any, of plaintiff's MOJO songs.

While we understand the practical difficulty presented by the fact that the titles are similar, and when performances are reported, it is often impossible to ascertain later, exactly whose composition was used, this problem is not one which we may hope to resolve on this trial record.

As we have determined that the respective compositions do not infringe, and are each entitled to the protection of the copyright laws, we are unable to divide such performance and mechanical royalties as may presently be held in escrow by BMI. Furthermore, BMI is not a party to the litigation, nor are those who were obligated in the first instance to make the payments.

Each party has contributed enough original words and music to the MOJO idea, and to a phrase in public domain, so as to have an original work, which has and is entitled to copyright protection and which the owner may exploit.

*Conclusion*

I find that plaintiff is the owner of a valid copyright, originally issued to Bright in 1960, and duly assigned to her, covering the words and music of "MOJO WORKOUT," a dance, as performed by Bright on a recording, Ex. 6, and also as set forth in a 1960 lead sheet filed in the Copyright Office, and a further copyright for additional words and music filed in 1966 (No. EU 969465), and that such work is an original composition of words and music, made by Miss Stratchborneo, Miss Sapp a/k/a De Pores and Mrs. Fulmer, which does not infringe any rights of defendants.

I find that defendant Dare is the owner of a valid copyright originally issued to Foster on October 29, 1956 (No. EU 462214) and duly assigned to Dare, covering the words and music of "GOT MY MOJO WORKING," as set forth in a 1956 lead sheet filed in the Copyright Office and on the demonstration record, Ex. 6, and that such work is an original musical composition of words and music made by Preston Foster, which does not infringe any rights of plaintiff.

I find no unfair competition, or "passing off" by any party to this litigation, of its or her musical property as that of the other.

The Court adjudges that all relief shall be denied, and that no party recover costs. The Clerk shall enter judgment as required by Rule 58, F.R.Civ.P. The foregoing constitutes findings of fact and conclusions of law as required by Rule 52, F.R.Civ.P.

```
Oh yeah
Yeah got my mo-mojo working
Yeah I got my roogalater working on
    you
Yeah, boogalater
```

```
I'm going to try it on you, oh yeah
Well I tried in New York City
You goin' to give me a chance on you
Oh yeah
Boogalater, mojo etc.
```